F I L E D
United States Court of Appeals
Tenth Circuit

SEP 9 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

————————————

THOMAS B. HENNIGH,

    Plaintiff - Appellant,

v.

CITY OF SHAWNEE, TERRY
POWELL, and HANK LAND,

    Defendants - Appellees.

No. 97-6239

————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 96-CV-1493)**

————————————

John F. Percival of Beech Edwards & Percival, PLLC, Oklahoma City, Oklahoma,
for Plaintiff-Appellant.

Margaret McMorrow-Love, Oklahoma City, Oklahoma, for Defendants-Appellees.

————————————

Before **BALDOCK**, **McKAY**, and **KELLY**, Circuit Judges.

————————————

**McKAY**, Circuit Judge.

————————————

Plaintiff-Appellant, Mr. Thomas Hennigh, alleges that Defendants-Appellees, the City of Shawnee, Oklahoma [the City]; Hank Land, the City's Chief of Police; and Terry Powell, the City Manager, deprived him of his constitutional rights in violation of 42 U.S.C. § 1983 by demoting him without following the procedures outlined in a collective bargaining agreement [CBA] signed by the City of Shawnee and the police officers' union.

Plaintiff is an employee of the City of Shawnee Police Department. As a police officer, he is subject to and protected by a collective bargaining agreement negotiated by the International Union of Police Associations, Shawnee Local No. 3, AFL-CIO [the Union], and the City. Prior to May 1996, Plaintiff held the rank of lieutenant. In early 1996, two of the City's female employees reported, when queried, inappropriate gender-based conduct by Plaintiff. See Jt. App., Doc. V at E, H. The women signed statements detailing Plaintiff's alleged inappropriate conduct. See id. One of the statements was made "[u]nder protest," and the other complainant stated that she did not wish to pursue any civil, criminal, or disciplinary action against Plaintiff. Id., Doc. V at G, H. Plaintiff was suspended from his job, with pay, based upon the initial investigation of these complaints. See id., Doc. V at B & J; Doc. VI at A.

Pursuant to the CBA, Plaintiff was notified of his right to a hearing on the

charges against him before the Police Review Board [Review Board]. See id., Doc. V at L, M, N. At the Review Board hearing, counsel for Plaintiff requested that the charges against him be dropped because the complaints were not in the form of affidavits signed and sworn under oath. See id., Doc. V at Q. The Review Board dismissed the charges because the City "failed to follow . . . Article 6 Section 1 of the [CBA] in reference to formal written (notarized) complaints for which administrative action may be taken or reviewed." Id., Doc. V at R.

After the Review Board refused to hear evidence on the charges against Plaintiff, the City Manager met with the female employees who had signed the statements alleging inappropriate conduct by Plaintiff. See id., Doc. V at U. The City Manager also allowed Plaintiff and his counsel an opportunity to respond to the allegations before any discipline was imposed. See id. The Police Chief recommended to the City Manager that Plaintiff be disciplined for improper conduct on duty. See id., Doc. V at V. The City Manager agreed with the recommendation and imposed discipline in the form of a reduction in rank from lieutenant to sergeant, one year of probation, and a requirement that Plaintiff attend remedial sexual harassment training. See id., Doc. V at W.

Plaintiff filed suit, claiming that Defendants had violated his constitutional rights. See id., Doc. I. Plaintiff states that Defendants deprived him of his right

to procedural and substantive due process, arguing that his "property rights in his rank as secured by the Collective Bargaining Agreement have been impaired." Id. He also contends that Defendants discriminated against him by denying him equal protection of the law. See id. Plaintiff filed an additional claim for violation of his First Amendment rights and also asserted a state law breach of contract claim. See id. Defendants filed a collective Motion for Partial Summary Judgment, requesting summary judgment on all claims except the First Amendment and pendant state contract claim. See id., Doc. III.

The district court granted Defendants' Motion for Partial Summary Judgment, holding that: (1) because Plaintiff did not have a property interest in his rank, he was not entitled to assert a claim of denial of procedural or substantive due process; (2) Plaintiff's equal protection claims failed because the City's actions were rationally related to a legitimate municipal goal and because Plaintiff failed to present evidence that the City had selectively enforced its policies; and (3) the individual Defendants were entitled to qualified immunity because Plaintiff had not proved any violation of a clearly established constitutional right. See id., Doc. VII. After the entry of the order granting Defendants partial summary judgment, Plaintiff stipulated to the dismissal of his claims that were not disposed of by that order, i.e., his First Amendment and breach of contract claims. See id., Doc. XI.

Because the district court had dismissed some of Plaintiff's claims on the merits but dismissed others without prejudice, all claims against all parties had not been decided on the merits and we could not properly assert appellate jurisdiction. See Heimann v. Snead, 133 F.3d 767, 769 (10th Cir. 1998) ("Parties may not confer appellate jurisdiction upon [this court] by obtaining a voluntary dismissal without prejudice of some claims so that others may be appealed."); Cook v. Rocky Mountain Bank Note Co., 974 F.2d 147, 148 (10th Cir. 1992) ("[W]hen a plaintiff voluntarily requests dismissal of her remaining claims without prejudice in order to appeal from an order that dismisses another claim without prejudice, we conclude that the order is not 'final' for purposes of [28 U.S.C.] § 1291."). We issued an order allowing the parties thirty days to secure a Rule 54(b) certification from the district court or to obtain an order adjudicating the remaining claims. We have received the district court's order dismissing the unadjudicated claims with prejudice, and we proceed to address this appeal on the merits.

Summary judgment is appropriate if the pleadings and other documents before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> When reviewing the district court's ruling on a summary judgment
> motion, we review the motion de novo. We must decide whether any

genuine issue of material fact is in dispute and, if not, whether the law was correctly applied. We must look at the record in the light most favorable to the party opposing summary judgment. Summary judgment is only appropriate if the moving party is entitled to judgment as a matter of law.

Murray v. City of Sapulpa, 45 F.3d 1417, 1419 (10th Cir. 1995) (citations omitted).

In considering Plaintiff's claims, we bear in mind that the Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991).

To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process? See Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996). To properly allege a violation of his procedural due process rights, Plaintiff must first demonstrate that he had a protected property or liberty interest in his status as a lieutenant.

-6-

The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Carnes v. Parker, 922 F.2d 1506, 1512 n.2 (10th Cir. 1991). "The existence of a property interest is defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and [] support claims of entitlement to those benefits." Driggins v. City of Oklahoma City, 954 F.2d 1511, 1513 (10th Cir.) (internal quotations omitted), cert. denied, 506 U.S. 843 (1992); see Bishop v. Wood, 426 U.S. 341, 344 (1976) (holding that the existence of a legitimate property right in employment is determined by reference to state law). This court has held that if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest. See Campbell v. Mercer, 926 F.2d 990, 993 (10th Cir. 1991) ("For example, if a statute, regulation, or policy . . . restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown." (internal quotations omitted)).

The same analysis applied to determine the existence of a property right in employment is utilized to determine if there is a property right in a particular employment status. Procedural detail in a statute or regulation, standing alone, is

not sufficient to establish a protected property interest in an employment benefit. See id. However, if the statute or regulation places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause, then a property interest is created. See Williams v. Kentucky, 24 F.3d 1526, 1537-38 (6th Cir.) (holding that state statute providing that employees not be demoted except for cause granted employee a protected property interest in higher-ranking job), cert. denied sub nom. Allen v. Williams, 513 U.S. 947 (1994); Sanchez v. City of Santa Ana, 915 F.2d 424, 428-29 (9th Cir. 1990) (holding employee had property interest in merit pay because the city charter provided it could be reduced only for specified reasons), cert. denied, 502 U.S. 815 (1991). Cf. Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 539 (10th Cir. 1995) (stating that a property interest *might* be created by specific statutory provisions or contract terms qualifying an employer's discretion to reassign or transfer the employee); Melton v. City of Oklahoma City, 879 F.2d 706, 719 (10th Cir. 1989) (holding that plaintiff was deprived of a property interest in his status as a retired police officer because state statutes and the city's operations manual provided benefits to retired officers), reh'g on other grounds, 928 F.2d 920 (en banc), cert. denied, 502 U.S. 906 (1991); but cf. Childers v. Independent Sch. Dist. No. 1 of Bryan County, 676 F.2d 1338, 1341 (10th Cir. 1982) (holding that although tenured teachers had a property right in continued employment, they did

not have a property interest in a particular assignment because their contract did not provide that teachers must be given the same assignment or wage upon renewal).

Plaintiff contends that because the CBA contains specific grounds for demotion, it confers a property interest in his rank. See Appellant's Br. at 16. Plaintiff relies on the terms of the CBA which provide that the City may "promote, assign, suspend, or discharge [officers] for cause shown . . . subject to the Constitution and the Statutes of the State of Oklahoma, the United States Constitution, and the grievance procedures as set forth in this Agreement." Jt. App., Doc. V at C. Notwithstanding this provision, Defendants argue that the CBA does not confer a property interest on Plaintiff because the City charter allows the City Manager to take personnel actions at his discretion and because the charter effectively trumps any provision in the CBA. See Appellees' Br. at 11-14. In response to Defendants' assertions, Plaintiff argues that the Oklahoma Firefighters' and Policemen's Arbitration Act [FPAA] requires the City Manager to be bound by the terms of the CBA, because the FPAA trumps local charter provisions unless they are matters of purely local concern. See Appellant's Br. at 9-10, 15-16; see also Okla. Stat. Ann. §§ 11-51-101 to 113.[1]

---

[1] The FPAA removed the right to strike from police officers and firefighters in order to guarantee public safety. See Garner v. City of Tulsa, 651 P.2d 1325, 1329 (Okla. 1982). In return for the deprivation of the right to strike, the police

Both Defendants and Plaintiff agree that the terms of the FPAA trump conflicting terms in the City's charter unless the issue involved is one of local, rather than statewide, concern. See Appellant's Br. at 11; Appellees' Br. at 11-17; cf. Vinson v. Medley, 737 P.2d 932, 936 (Okla. 1987) (stating in the context of a zoning issue that "[a] city charter supersedes state law only when it affects a subject that is deemed to lie exclusively within municipal concern"). Oklahoma courts have consistently held that FPAA provisions trump the conflicting provisions of local charters. See Fraternal Order of Police, Lodge No. 165 v. City of Choctaw, 933 P.2d 261, 266 (Okla. 1996) ("We continue to adhere to our position that collective bargaining for police and firefighters is a matter of statewide concern."); City of Bethany v. Public Employees Relations Bd., 904 P.2d 604, 607 n.4 (Okla. 1995); City of Tulsa v. Public Employees Relations Bd., 845 P.2d 872, 875 (Okla. 1990) ("The rights provided in the [FPAA] have previously been defined by this Court as matters of statewide concern.").

The courts of Oklahoma have not addressed the question of whether a collective bargaining agreement can confer a property right in employment. In Graham v. City of Oklahoma City, this court explicitly left open the issue of

---

officers and firefighters received the right to collectively bargain for the terms and conditions of their employment. See Okla. Stat. Ann. § 11-51-108; City of Anadarko v. Fraternal Order of Police, Lodge No. 118, 934 P.2d 328, 331 (Okla. 1997).

whether a CBA in force pursuant to the FPAA would create a protected property interest. See Graham v. City of Oklahoma City, 859 F.2d 142, 146 n.6 (10th Cir. 1988) (declining to decide this issue because it was raised for the first time on appeal). Other circuit courts have held that collective bargaining agreements can establish property rights. See Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); Johnston-Taylor v. Gannon, 907 F.2d 1577, 1581 (6th Cir. 1990); cf. Warzon v. Drew, 60 F.3d 1234, 1240 (7th Cir. 1995) (holding that, absent civil service regulations or a collective bargaining agreement, a public employee must look to an employment contract to establish a property right); Nichols v. City of Kirksville, 68 F.3d 245, 248 (8th Cir. 1995) (involving state legal precedent specifying that the collective bargaining agreement was not binding on the city).

Defendants argue that the City Manager cannot bind himself to any restrictions on his power to take personnel actions, such as those provided by the CBA, citing Graham, Driggins, and Umholtz v. City of Tulsa. See Appellees' Br. at 13. In Graham, this court stated that "[u]nder Oklahoma law, where certain terms of employee dismissals are explicitly stated in the city charter, the city manager or other city officials are not authorized to alter or otherwise restrict those terms so as to legally bind the city." Graham, 859 F.2d at 146. We held in Driggins that the city council, city manager, and city personnel director lacked authority to bind the city to terms or reasons for dismissal other than the terms or

reasons stated in the city charter.  Driggins, 954 F.2d at 1513-15.

However, Graham and Driggins are distinguishable from this case.  The plaintiffs in Graham and Driggins claimed that they had a protected property interest in their jobs because city personnel policies, rather than a CBA, outlined the circumstances under which an employee could be discharged.  See Graham, 859 F.2d at 146; Driggins, 954 F.2d at 1514-15.  Additionally, the holdings in Driggins and Graham are based on the holding of Umholtz v. City of Tulsa, 565 P.2d 15, 22 (Okla. 1977).  The Oklahoma Supreme Court held in Umholtz that rules promulgated by the police department did not alter the Chief of Police's powers, pursuant to the city charter, to suspend officers without notice and a hearing.  See id.  The court stated that "[m]unicipal officials empowered to perform certain acts, cannot themselves limit their powers by imposing restrictions upon the exercise of their power in such a manner as to effect the legality of their actions."  Id.  Unlike the case before us, Umholtz did not involve a collective bargaining agreement.  We also note that United States Supreme Court decisions subsequent to Umholtz question its recognition of a "limited" property interest.  See Bailey v. Kirk, 777 F.2d 567, 573-75 (10th Cir. 1985); Poolaw v. City of Anadarko, 660 F.2d 459, 463-64 (10th Cir. 1981).  In Umholtz the court held that a property interest might be established by a city charter provision stating that employees could only be disciplined for good cause shown,

-12-

but because the interest was "limited," i.e., the charter did not provide a procedure for the review of personnel decisions, plaintiff had no claim under the Due Process Clause. See Umholtz, 565 P.2d at 23-24.

Based on our prior holdings interpreting Oklahoma law and the decisions of the Oklahoma courts that matters concerning the FPAA are not of purely local concern, we hold that Plaintiff had a legitimate property interest in his rank. This property interest was created by state law in the form of the CBA, contracted pursuant to state legislation. The CBA gave Plaintiff a legitimate expectation of continued employment as a lieutenant unless the City found "cause shown." Jt. App., Doc. V at C; cf. Bailey, 777 F.2d at 574 (holding that a public employee, who could not be suspended except for cause, possessed a protected property interest in continued employment).

The second prong of the test for the deprivation of a procedural due process right asks whether the individual was afforded an appropriate level of process prior to the deprivation of the protected interest. See Watson, 75 F.3d at 577. Plaintiff maintains that his procedural due process rights were violated when he was disciplined by Defendants because the discipline was not imposed in accordance with the CBA's requirement that such action could only be taken if it was based on notarized complaints. However, the Constitution does not require that each individual receive the procedural guarantees provided for by the

-13-

instrument which bestows a property interest. See Hicks v. City of Watonga, 942 F.2d 737, 746 & n.4 (10th Cir. 1991). The Due Process Clause of the United States Constitution entitles each citizen to notice and an opportunity to be heard prior to the deprivation of a fundamental right. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (A "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); Roth, 408 U.S. at 570 & n.7 (1972).

In Hicks, the plaintiff's argument that he had a constitutionally protected property interest in certain city personnel procedures proved unavailing. This court stated that "'[a] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.'" Hicks, 942 F.2d at 746 n.4 (quoting Mangels v. Pena, 789 F.2d 836, 838 (10th Cir. 1986)); cf. Levitt v. University of Tex. at El Paso, 759 F.2d 1224, 1230 (5th Cir.) ("Even if [a] university depart[s] from its own regulations, not every violation by an agency of [its own] rules rises to the level of a due process claim." (internal quotations omitted)), cert. denied, 474 U.S. 1034 (1985). We hold that the hearing before the Review Board and the other opportunities provided to this Plaintiff, at which he was allowed to

participate and was represented by counsel, met the constitutional standard for a pre-termination hearing. See West v. Grand County, 967 F.2d 362, 367 (10th Cir. 1992); Powell v. Mikulecky, 891 F.2d 1454, 1458-60 (10th Cir. 1989).

Additionally, a plaintiff is not entitled to an extensive or formal pre-termination hearing if there are adequate post-termination procedures. See Benavidez v. Albuquerque, 101 F.3d 620, 627 (10th Cir. 1996) ("Because it is followed by post-termination proceedings, the pre-termination hearing is not meant to resolve definitively the propriety of the discharge, but only to determine whether there are reasonable grounds to believe the charges are true and the action is correct."); Powell, 891 F.2d at 1458-59. The other circuit courts generally hold that grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process. See Chaney v. Suburban Bus Div. of Reg'l Transp. Auth., 52 F.3d 623, 628-29 (7th Cir. 1995); Armstrong v. Meyers, 964 F.2d 948, 951 (9th Cir. 1992); Narumanchi v. Board of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988); Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir. 1983). We agree that the CBA's grievance procedure provided Plaintiff an adequate post-deprivation remedy for Defendants' violation of the CBA provision regarding the imposition of discipline. Plaintiff availed himself of this procedure; however, the Union declined to bring a formal grievance against the City for its failure to discipline

Plaintiff in accordance with the CBA.  See Jt. App., Doc. VI at 6, 15, A.[2]

"Although the phrase 'due process' connotes a right to a fair hearing, the Supreme Court has recognized that the clause contains a substantive component as well."  Archuleta, 936 F.2d at 489.  Substantive due process claims are not based on state law but are founded upon "deeply rooted notions of fundamental personal interests derived from the Constitution."  Mangels, 789 F.2d at 839.  We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process doctrine.  See Archuleta, 936 F.2d at 489 n.6.  Therefore, it is far from certain that Plaintiff's status as a lieutenant would be a fundamental property right protected by the substantive due process doctrine.  See United States v. Salerno, 481 U.S. 739, 746 (1987) ("'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty'" (internal citations omitted)).

Assuming, *arguendo*, that Plaintiff did have a fundamental property interest

---

[2] We note that when an employee charges that an employer has breached a collective bargaining agreement and that their union has not met its duty of fair representation in challenging that breach, the employee has stated a cause of action for a "hybrid suit" under the Labor Management Relations Act of 1947 § 301, codified at 29 U.S.C. § 185.  See Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 530-31 (10th Cir. 1992).  We also note that no such claim is properly before us.

in his rank which was subject to substantive due process protection, we conclude that Defendants' termination of that interest was not arbitrary or without a rational basis.  See Curtis v. Oklahoma City Pub. Schs. Bd. of Educ., Indep. Dist. No. 89, No. 96-6134, 1998 WL 315596, at *11-*12 (10th Cir. June 16, 1998); Brenna v. Southern Colo. State College, 589 F.2d 475, 477 (10th Cir. 1978) ("'Substantive' due process requires only that termination of [a protected] interest not be arbitrary, capricious, or without a rational basis.").  Defendants acted to address their potential liability under federal statutes prohibiting the type of conduct allegedly committed by Plaintiff.  This is not an irrational basis for discipline.

In concluding that Plaintiff failed to adequately allege that Defendants violated his right to equal protection of the law, the district court properly held that Plaintiff did not show how he was treated differently from others similarly situated.  See Jt. App., Doc. VII at 6-7.  The complaint alleges that Plaintiff was subjected to "discipline and a disciplinary procedure not applicable to any other police officer under the Collective Bargaining Agreement."  Id., Doc. I at 3.  In support of his claim of disparate treatment, Plaintiff alleges that he was the first officer investigated or disciplined under the City's sexual harassment policy and that he was the only officer disciplined in any fashion other than by reprimand.  See id., Doc. VIII at 11.  He also states that the only other employee who was

-17-

disciplined pursuant to the policy was reprimanded for failure to report an incident of harassment, rather than the act of harassment. See id. This does not assert how Plaintiff was treated differently from others similarly situated, i.e., those accused of committing sexual harassment.[3] The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action; therefore, Plaintiff's equal protection claim was properly dismissed. See Norton v. Village of Corrales, 103 F.3d 928, 933 (10th Cir. 1996); Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 942 (7th Cir. 1996).

Plaintiff has failed to show that Defendants violated his right to procedural or substantive due process or that Defendants violated his right to equal protection of the law. Because he has not established a violation of any clearly established constitutional rights, Defendants were correctly spared the burden of further proceedings in this case. See Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997); Gallegos v. City & County of Denver, 984 F.2d 358, 361 (10th Cir.), cert. denied, 508 U.S. 972 (1993). The decision of the district court is, therefore, AFFIRMED.

---

[3] We also note that the documents Plaintiff refers to in support of his argument are not included in the record before us.