**Michael Dean HUMMEL, Plaintiff,**

v.

**Lane McCOTTER, et al., Defendants.**

No. 2:94 CV 702 K.

United States District Court,
D. Utah,
Central Division.

Dec. 2, 1998.

Kathryn Collard, Law Firm of Kathryn Collard LC, Salt Lake City, UT, for plaintiff.

J. Mark Ward, Donald H. Hansen, Utah Attorney General's Office, Jennifer L. Falk, Utah Attorney General's Office, Salt Lake City, UT, Jennifer L. Falk, utah Attorney General's Office Litigation Unit, Salt lake City, UT, for defendants.

## ORDER

KIMBALL, District Judge.

Before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment. Oral argument of the motions was held on November 12, 1998. Plaintiff was represented by Kathryn Collard; Defendants were represented by Jennifer Falk. Following oral argument, the motions were taken under advisement. Plaintiff's motion is first addressed.

### *PLAINTIFF'S MOTION TO STRIKE*

Plaintiff moved to strike the Affidavit of Gwen Rowley submitted by Defendants in support of their motion and certain of the factual allegations contained in the introduction of Defendants' supporting memorandum. Defendants stipulated during oral argument that any factual statements in the introduction are not to be relied upon by this Court in ruling on their summary judgment motion, and this Court did not do so. That issue is, therefore, moot.

Defendants submitted a supplemental affidavit to cure any defects in Gwen Rowley's affidavit. Leaving aside the question of whether a Rule 12(f) motion is the appropriate way to strike an affidavit, this Court finds that any errors were cured by the supplemental submission and that Plaintiff was not prejudiced by its filing, given the amount of time that elapsed between its filing and oral argument.

Accordingly, Plaintiff's motion to strike is denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences therefrom are to be examined in the light most favorable to the non-movant. *Id.*

### FACTUAL BACKGROUND

Plaintiff Michael Hummel alleges a variety of actions against a variety of entities and individuals connected with Hummel's arrest on charges of criminal child abuse in 1989. At that time, he was working for the Utah Department of Corrections ("DOC") as a prison security guard at the University Medical Center. Hummel's 11–year old daughter told her grandfather that Hummel had beaten her. Her grandfather reported the incident to the sheriff's office, and Hummel was eventually charged with violating *Utah Code Ann. § 76–5–109(3)(a)*—misdemeanor child abuse. DOC policy required Hummel to report the pending criminal charge to his supervisor, but he did not do so.

He believed he had made an arrangement with the investigator, pursuant to which: (i) he would plead guilty, complete family counseling, and be placed on probation for 1 year, (ii) his guilty plea would be held in abeyance for six months, and (iii) then the charge would be dismissed.

At his arraignment, Third District Court Judge Griffith told Hummel that he was not bound by any prior arrangement entered into between Hummel and county officials and assigned Defendant Gwen Rowley to prepare a presentence report. Rowley was a presentence investigator with the DOC's Adult Probation and Parole Division.

Rowley asked Hummel to sign a release, permitting her to contact his counselor, Eric Nielsen, another DOC employee, to discuss his case. Hummel refused to do so. Hummel alleges that Rowley retaliated against him for his refusal by changing her sentencing recommendation from counseling to jail. Hummel alleges that Rowley did so pursuant to a defacto DOC policy recommending incarceration for criminal defendants perceived to be uncooperative. Rowley submitted an affidavit in which she states that Hummel's refusal to sign the release was only one example of many she observed that lead her to conclude that Rowley was uncooperative.

At his sentencing on October 10, 1989, Judge Griffith sentenced Hummel to 30 days in jail commencing immediately, a $300 fine, and 150 hours of community service. Hummel's wife then contacted his DOC supervisor to inform him that Hummel was incarcerated. Hummel completed his jail sentence and was released 5 days early.

On October 10th, the DOC suspended Hummel without pay. On November 20th, he was charged with three policy violations: (i) unlawful conduct, *AE 02/03.37A(5)*, (ii) failure to report a criminal charge in writing, *AE 02/02.02C*, and (iii) disrespectful verbal exchange with Judge Griffith, *AE 02/03.010*. He was reinstated on February 21, 1990, with backpay. At that point, Hummel was assigned to work as a tower guard at the Utah State Prison, where Hummel alleges he was subjected to unsafe and unsanitary working conditions, specifically, the water pipes leaked, the heater did not work, and bird excrement was present.

On March 30, 1990, Hummel filed a series of motions attempting to have his guilty plea set aside and his conviction reversed. On April 21, 1990, the DOC began administrative proceedings to resolve the policy violation

charges. At Hummel's request, the DOC stayed those proceedings pending the resolution of his judicial appeal.

After the Utah Supreme Court denied Hummel certiorari on May 10, 1991, Administrative Law Judge Spencer Robinson issued a report and recommendation finding that Hummel had violated the policies as charged and recommending a minimum punishment of 30 days suspension and a maximum punishment of dismissal. The report was reviewed by Defendant Lane McCotter, Director of the Division of Institutional Operations, who recommended termination to Defendant Gary DeLand, Executive Director of the DOC. McCotter notified Hummel of his recommendation and placed him on leave with pay pending resolution of the matter. Hummel requested an appeal hearing, which was conducted by Defendant David Franchina, DOC Deputy Director. On May 28th, Franchina held a hearing with Hummel, considered the matter, and dismissed Hummel. Hummel filed an appeal with the Career Service Review Board ("CSRB").

Hummel also filed a Petition for Writ of Habeas Corpus in Third District Court for the State of Utah, again seeking to have his guilty plea set aside and his conviction reversed. On January 2, 1992, Judge Richard Moffat granted his petition. However, the DOC refused Hummel's request for reinstatement.

In the meantime, Hummel continued to pursue his appeal before the CSRB. During that process, Hummel alleges that Defendant Ralph Adams, a special assistant attorney general for the State of Utah who represented the DOC, stated that Hummel had committed child sex abuse to the Administrator of the CSRB. The CSRB found in Hummel's favor and ordered reinstatement with backpay, finding that the only violation Hummel committed was failing to report the criminal charge. Hummel declined the offer of reinstatement.

Hummel brought suit against Defendants DeLand, McCotter, Franchina, the DOC (together, the "DOC Defendants"), Adams, and Rowley. Hummel sued the individual defendants in their individual capacities.

## DISCUSSION

### 1. Defendant DeLand.

This Court must first determine whether DeLand should, as Defendants urge, be dismissed because he has never been served. Rule 4(m) of the *Federal Rules of Civil Procedure* mandates dismissal if service is not effectuated within 120 days unless the plaintiff can show "good cause" why it was not made. The Tenth Circuit has "interpreted the phrase narrowly, rejecting inadvertence or neglect as 'good cause' for untimely service." *In re Kirkland,* 86 F.3d 172, 174 (10th Cir.1996) *(upholding dismissal of pro se plaintiffs' claims when service was effectuated on 121st day after filing).* Plaintiff advances a variety of reasons why DeLand should not be dismissed in this case.

■ Plaintiff first asserts that Defendants should be estopped from urging dismissal having failed to do so earlier. However, the responsibility of serving a defendant within the time prescribed is on the plaintiff. A plaintiff who is unable to do so has the responsibility of asking the court for an extension. The burden is not on the defendant, who may not even know that the case has been filed, to make a timely request for dismissal.

Similarly, Plaintiff asserts that the Attorney General's office waived the defense by filing an answer and conducting discovery on behalf of all Defendants. However, there is no evidence to support Plaintiff's waiver theory. As Defendants point out, the answer filed by the Attorney General's office raises the fact that DeLand was not served as an affirmative defense.

■ Plaintiff next asserts that Plaintiff should be granted an extension, having made a reasonable effort to serve DeLand by (i) asking the Attorney General's office to acknowledge service of process for him, which it refused in writing to do, and (ii) mailing a request for acknowledgment of service to DeLand, which was returned as "undelivered." At oral argument, Plaintiff's counsel asserted for the first time that DeLand was evading a process server who had been employed to serve him. However, no evidence

supporting this new assertion has been submitted.

In the judgment of this Court, Plaintiff has failed to establish legally sufficient "good cause" for his failure to serve DeLand. The pro se plaintiffs in *Kirkland* waited 121 days to serve the defendants because they hoped that other litigation in which they were engaged with the same defendants in another jurisdiction would resolve the issue and make the suit unnecessary. The Tenth Circuit found that this did not constitute good cause, and their case was dismissed. Even assuming Plaintiff had a better explanation for his failure to serve DeLand, it would be fundamentally unfair to require DeLand to defend himself in a lawsuit that has been pending for four years and is now scheduled and ready for trial, especially when no evidence has been presented to show that DeLand had actual knowledge of this lawsuit's existence.

Therefore, DeLand is dismissed without prejudice.

## 2. Defendant DOC.

This Court must next determine whether the DOC should be dismissed because no cause of action is directed toward the DOC. Defendants assert that Plaintiff seeks equitable relief in the form of an injunction restraining the DOC from violating Hummel's rights or retaliating against him for the filing of his grievance, but that because Plaintiff has not alleged any violation of any federal or state law by the DOC, there is nothing to enjoin. Defendants also assert that Plaintiff has no standing to request injunctive relief because he is no longer employed by the DOC. Plaintiff did not respond to this persuasive argument.

Accordingly, the DOC is dismissed with prejudice.

## 3. Plaintiff's § 1983 Claims.

■ Plaintiff asserts that Defendants committed a number of § 1983 violations. Because Defendants raise the affirmative defense of qualified immunity, Plaintiff "must

show that the law was clearly established when the violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law." *Woodward v. City of Worland,* 977 F.2d 1392, 1396 (10th Cir.1992). Defendants then assume the normal summary judgment burden of establishing that no material facts that would defeat their claim for qualified immunity remain in dispute. *Id.* at 1396–97. Applying this framework, each of the violations alleged by Plaintiff is considered in turn.

■ *a. Whether the DOC Defendants violated § 1983 by suspending Hummel without a hearing from October 10, 1989, to February 21, 1990?* Plaintiff asserts that R477–11–1.(1) of the *Utah Administrative Code* prohibits the suspension of a career service employee without pay for more than 30 days without a hearing, creating property interests protected by the Due Process Clause (both substantive and procedural). Plaintiff asserts further that the DOC Defendants are not entitled to qualified immunity [1] because: (i) they knew or should have known that such suspension violated Hummel's protected property interests and (ii) they acted with the malicious intent to deprive him of his rights, as evidenced by their violation of the policy, the length of the suspension, the fact that the suspension was without pay, and that Hummel was subjected to a retaliatory reassignment. Plaintiff cites *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), for the proposition that merit employees cannot be deprived of employment without a hearing and asserts that given that decision, the DOC Defendants knew that Hummel could not be deprived of his employment for more than 30 days without prior notice and a hearing.

As procedural defenses, Defendants assert that the claim fails as to Franchina because it has never been pled as to him, as to McCotter because he was not the DOC director

---

1. Qualified immunity is unavailable when a defendant official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. *Devlin v. Smalley,* 4 F.Supp.2d at 1321.

until January 1992, and as to DeLand because he has never been served.

Substantively, Defendants assert that pre-hearing suspension does not violate procedural due process when the employee receives a full hearing after suspension, citing *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), and that the provisions of the *Utah Administrative Code* to which Hummel refers were not in effect in 1990, when the suspension occurred, and did not take effect until 1992. Defendants assert that the suspension does not implicate Hummel's substantive due process rights, citing *Hennigh v. City of Shawnee,* 155 F.3d 1249, (10th Cir.1998).

■ Hummel's claim cannot survive these attacks. The administrative provisions cited by Plaintiff were not in effect at the time and could not, therefore, have created protected property interests. While a public employee dismissible only for cause, like Plaintiff, does have a protected property interest in continued employment, *Gilbert* establishes that an adequately prompt post-suspension hearing is adequate to protect that interest when that employee has been arrested and charged with a crime. 117 S.Ct. at 1814. Plaintiff concedes that he was afforded post-suspension due process.

■ Tenth Circuit "precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the substantive due process doctrine." *Hennigh,* 155 F.3d at 1257. Assuming that a plaintiff does have a protected property interest in his employment, substantive due process requires only that termination of the interest not be arbitrary, capricious, or without a rational basis. *Id.* For many of the reasons discussed in *Gilbert* with respect to procedural due process, this Court finds that immediately suspending a police officer convicted and serving time for a violent crime does not violate his substantive due process rights.

Because Plaintiff has failed to show that Defendants violated his clearly established rights to procedural or substantive due process, Defendants are entitled to qualified immunity. Plaintiff's claim is also barred by Defendants' procedural defenses.

■ *b. Whether the DOC Defendants violated § 1983 by dismissing Hummel?* Plaintiff asserts that R137–1–20 C.2 of the *Utah Administrative Code* requires a proportionate relationship between the offense and the penalty, and that the CSRB found that dismissal was disproportionate to the severity of the policy violation. Plaintiff asserts further that the DOC Defendants are not entitled to qualified immunity because Hummel's right to proportionate treatment was well established, citing *Gholson v. Murry,* 953 F.Supp. 709 (E.D.Va.1997); *NY Transit Authority v. Beazer,* 440 U.S. 568, 584–89, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979).

Specifically, Plaintiff asserts that the DOC Defendants knew that Hummel's conviction was based on a guilty plea that was unlawfully taken because Judge Gregory K. Orme of the Utah Court of Appeals issued a dissent in which he expressed that opinion and because the DOC stipulated to the grant of the writ of habeas corpus Hummel subsequently sought.

Defendants correctly assert that Hummel can establish a violation of his procedural due process rights only if he can establish that he was denied the right to be heard, which he has not done. *See Board of Regents v. Roth,* 92 S.Ct. at 2709–10. As discussed more fully in the following section, Defendants also correctly assert that Plaintiff cannot state a substantive due process claim inasmuch as a plaintiff cannot state such a claim where that plaintiff receives a procedurally adequate hearing after termination, through which that plaintiff is reinstated with backpay. *Archuleta v. Colorado Dep't of Institutions,* 936 F.2d 483, 491 (10th Cir.1991).

Defendants also correctly assert that the DOC Defendants are entitled to qualified immunity because Hummel was terminated in May 1991 and the CSRB decision upon which he relies to establish that Defendants knew that what they were doing was unjustified was not issued until July 1992. Defendants also persuasively assert that a dissenting opinion like Judge Orme's, suggesting what Plaintiff might do, should he choose, does not constitute clearly established law.

c. *Whether the CSRB provided Hummel an adequate remedy?* Defendants assert that Plaintiff is not entitled to relief beyond that provided by the CSRB, citing *Archuleta.* In that case, the Tenth Circuit specifically held that the fact that more relief, including punitive damages, is available under § *1983* does not mean that the remedy provided by state law is constitutionally inadequate. *Archuleta,* 936 F.2d at 491.

In response, Plaintiff asserts that he complains not only that he was deprived of property, but that he was terminated in retaliation for grieving the DOC Defendant's unlawful employment actions, a right protected by the First Amendment, and that his termination deprived him of a liberty interest in not being subject to sanctions more serious than those imposed on other officers. Plaintiff cites *Wudtke v. Davel,* 128 F.3d 1057, 1062–63 (7th Cir.1997), for the proposition that "[o]nce a wrong has been characterized as a constitutional tort, the fact that it may also be redressable under state law does not bar the victim from bringing an action under § 1983."

To the extent *Wudtke* is inconsistent with *Archuleta, Archuleta* controls. Under *Archuleta,* once a plaintiff has been granted reinstatement with backpay, that plaintiff is not entitled to further relief. To the extent Plaintiff is now attempting to assert an equal protection claim, Plaintiff has failed his summary judgment burden to go beyond mere allegations and point to specific evidence supporting his claim. There is no evidence in the record showing that others were disciplined less severely who engaged in the same or similar conduct. *See Hennigh,* 155 F.3d at 1257 *(affirming district court's dismissal of equal protection claim when plaintiff did not show how he was treated differently from others similarly situated).*

d. *Whether the DOC Defendants violated § 1983 by refusing to reinstate Hummel after learning his conviction had been overturned?* Plaintiff asserts that the refusal of the DOC Defendants to reinstate him when the conviction that served as the just cause for his dismissal was overturned violated his protected property interests. Plaintiff asserts further that the DOC Defendants are not entitled to qualified immunity because this right was clearly established.

As Defendants assert, however, *Archuleta* makes clear that Plaintiff is not entitled to anything beyond the reinstatement and backpay he was awarded as a consequence of pursuing his administrative appeal before the CSRB.

e. *Whether the DOC Defendants violated § 1983 by demoting Hummel to the guard tower?* Plaintiff asserts that the reassignment constituted a "demotion" because: (i) he received less pay, (ii) had less responsibility, (iii) and was required to utilize a lesser degree of skill, citing *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 799 (10th Cir.1993). *Hooks* involves discharges and demotions made actionable by Title VII. This Court does not read *Hooks* to create a cause of action under § *1983.*

Defendants assert that, even assuming the reassignment constituted a demotion, Hummel has not shown a procedural due process violation. The reassignment was temporary and the state had a legitimate interest in removing a convicted child abuser from a publicly-prominent position to one where he would be less likely to upset the public trust in law enforcement. Defendants assert that he retained the same rank and salary, and, therefore, that he cannot show a substantive due process violation. The only property interest he can claim is the right to return to his position at the hospital. However, he has cited no law in support of the existence of any such right. Assuming he could, he cannot demonstrate that termination of the right was arbitrary and capricious.

Concerning the question of whether Plaintiff's salary remained the same, neither side submitted evidence. Plaintiff first asserted that his pay went down in his response to Defendants' motion for summary judgment, that is, after Defendant had fulfilled its initial burden of demonstrating the lack of evidence supporting Plaintiff's claim. Plaintiff, then, had the burden to prove the existence of a material issue of fact on the issue. Plaintiff failed to do so, and, in the absence of evidence that Plaintiff's pay was decreased, Plaintiff has not shown that a protectable

property interest was implicated by the transfer, especially given that the other problems were timely rectified. However, even assuming Plaintiff had shown that his pay went down, he still has not shown that he was unconstitutionally deprived of that interest. Accordingly, Defendants are entitled to qualified immunity with respect to any such claim.

 *f. Whether Rowley violated § 1983?* Plaintiff asserts that the CSRB found that Rowley changed her recommendation without telling Hummel that she did so and why she did so, violating Hummel's right to substantive due process, and that such substantive due process was well established, negating any claim to qualified immunity. Plaintiff also asserts that because Rowley was an employee of the DOC, and not the judiciary, she is not entitled to immunity as a judicial employee.

 Defendants assert that the identity of Rowley's employer is irrelevant inasmuch as immunity attaches to the function, not the person, citing *Valdez v. City and County of Denver,* 878 F.2d 1285, 1287 (10th Cir.1989). Defendants are correct. One whose activities are intimately associated with the judicial process enjoys immunity from suit when functioning in that capacity. *Tripati v. U.S. INS,* 784 F.2d 345, 348 (10th Cir.1986) *(granting immunity to probation officers for false statements made in a presentence report).* The Tenth Circuit has held that, when preparing a presentence report, "the probation service is an arm of the court. It is not an investigative arm for the prosecution. A presentence report is prepared exclusively at the discretion of and for the benefit of the court." *Id.* For that reason, Rowley has absolute immunity from suit.

Accordingly, Rowley is dismissed with prejudice.

## 4. Plaintiff's Defamation Claim.

 Plaintiff plead a claim of defamation, but, in response to Defendant's assertion that Plaintiff's defamation claim is barred by the statute of limitations, now claims that he is alleging a *§ 1983* claim. In support of his *§ 1983* claim, Plaintiff asserts that a person's

good name and reputation are protected liberty interests.

Utah law requires that actions for slander be brought within one year from the time the statement is known or reasonably discoverable by the plaintiff. *Utah Code Ann. § 78–12–29(4); Allen v. Ortez,* 802 P.2d 1307, 1314 (Utah 1990) *(construing § 78–12–29(4)).* Here, Plaintiff knew of the alleged slander on or around August 11, 1992—the date on the letter from CSRB Administrator Robert White to Adams that was copied and sent to Plaintiff's counsel, in which White suggests that Adams believes that Plaintiff had committed child sex abuse. Plaintiff's complaint was not filed, however, until July 15, 1994. Clearly, the statute of limitations on Plaintiff's defamation claim had expired before that point. Plaintiff's defamation claim is dismissed with prejudice on that basis. Summary judgment is also appropriate as to Plaintiff's defamation claim because he failed to file an undertaking as required by *Utah Code Ann. § 63–30–19. Rippstein v. City of Provo,* 929 F.2d 576, 578 (10th Cir.1991) *(holding dismissal with prejudice is appropriate remedy for failure to timely file undertaking).*

 Plaintiff cannot avoid this result by recharacterizing his claim as a *§ 1983* violation. Not every legally cognizable injury that might have been inflicted by a state official acting under color of law establishes a Fourteenth Amendment violation. *Paul v. Davis,* 96 S.Ct. 1155, 1159 (1976). An injury to reputation alone, apart from injury to some more tangible interest such as the loss of government employment or the loss of preferred regulatory status, is neither liberty nor property sufficient to invoke the protection of the Due Process Clause. *Id.* at 1161 *(explaining that reputational interests protected by Due Process Clause must stem from sanction applied by law as opposed to sanction applied by public opinion).* There is no evidence in the record showing that Plaintiff's reputation has been damaged as a consequence of the allegedly defamatory statement, let alone evidence showing that such damage led to "something more, such as discharge from government employment." *Walentas v. Lipper,* 862 F.2d 414, 420 (2nd

Cir.1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989). The statement at issue was made in the context of an appeal that resulted in Hummel's vindication.

Accordingly, Plaintiff's defamation claim is dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to strike is denied. Defendants' motion for summary judgment is granted, and Plaintiff's action is dismissed with prejudice as to all defendants except DeLand, with respect to whom Plaintiff's action is dismissed without prejudice. Each side is to bear his or its own costs.