**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

DUANE E. POTTS,

      Plaintiff-Appellant,

v.

DAVIS COUNTY; DAVIS COUNTY
SHERIFF'S OFFICE; KEVIN
McLEOD; BUD COX,

      Defendants-Appellees.

No. 07-4139

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:02-CV-0004-DB)**

---

Roger H. Hoole (Gregory N. Hoole with him on the briefs) of Hoole & King,
L.C., Salt Lake City, Utah, for Plaintiff-Appellant.

Kristin A. VanOrman (Jeremy G. Knight with her on the brief) of Strong and
Hanni, Salt Lake City, Utah, for Defendants-Appellees.

---

Before **McCONNELL**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Duane Potts resigned from his position as Sergeant with the Davis County Sheriff's Department and filed a 42 U.S.C. §1983 constructive discharge suit against Davis County, the Davis County Sheriff's Office, Lieutenant Kelly Sparks, Davis County Sheriff Bud Cox, and Chief Deputy Sheriff Kevin McLeod. He also alleged that defendants effectively terminated his employment in violation of his procedural and substantive due process rights. Mr. Potts appeals the district court's grant of summary judgment for defendants. We affirm.

## I.

Mr. Potts began working for the Davis County Sheriff's Department in 1977. In 1984, he was promoted to the rank of Sergeant, a position he held until January 2001. From 1992 until January 2001, Mr. Potts was a paramedic and worked as a Patrol Sergeant supervising between seven and ten paramedic deputy sheriffs.

On December 16, 1999, Chief Deputy Sheriff Kevin McLeod assigned Lieutenant Kelly Sparks to conduct an internal investigation into several complaints made against Potts by deputies whom Potts supervised. On February 2, 2000, following an interview with Mr. Potts and a pre-disciplinary conference with Mr. Potts and his attorney, Chief Deputy Sheriff McLeod informed Mr. Potts that he was terminated from employment with the Davis County Sheriff's Department. He gave Mr. Potts a Notice of Disciplinary Action which set forth six policy violations which had allegedly led to his termination:

-2-

(1) receiving a gratuity in the form of a Palm Pilot from a subordinate deputy in exchange for a special assignment, (2) failing to insure his crew was staffed at a minimum level, (3) failing to respond to calls for assistance from other law enforcement officers, (4) requiring his crew to leave assigned areas to attend meetings, (5) spending an inordinate amount of time in inactive capacity, and (6) verbally abusing, threatening, and intimidating subordinates.

Mr. Potts appealed his termination to the Career Services Counsel (CSC), the merit system commission with the responsibility to hear appeals from disciplinary actions involving deputy sheriffs. Two hearings were held during which the Sheriff's Department dropped three of the six charges: inadequate staffing, forcing his crew to leave assigned areas, and spending too much time in inactive capacity. On July 27, 2000, the CSC issued a decision reversing the Sheriff's Department's termination of Mr. Potts. He was then reinstated as a deputy sheriff with the rank of sergeant. However, he was reassigned to court security rather than returned to patrol.

In deciding to reassign Mr. Potts to the courts, Sheriff Cox and Chief Deputy Sheriff McLeod noted that they had concerns about allowing him to return to his patrol position given that he would be in a supervisory role over the very people who had made the original allegations. Mr. Potts objected to the reassignment, but began working in court security. Following his reinstatement, he received all of his back salary for the period of time between his termination

and his reinstatement. His salary, rank, and benefits remained the same except that he was no longer eligible to work night shifts and to receive the differential pay that would result, and he did not have a county vehicle to drive for several weeks.

Mr. Potts continued to request reassignment to his former position as a patrol supervisor, asserting that the transfer to court security was a demotion. He believed he was continually being retaliated against in numerous ways, and he complained that he was not receiving adequate backup protection from the Sheriff's Department when he had to serve protective orders.

In December 2000, Mr. Potts received a voice mail message on his work phone that had been left the previous evening. The message was largely incoherent, although the words "he's gonna die" appeared to him to have been spoken towards the beginning of the message. Aplt. App. at 563. Mr. Potts interpreted the message as a death threat from someone in the Sheriff's department because his work telephone number was not available to the general public. He reported the message to his supervisor. After listening to the tape, however, the Sheriff's Department declined to conduct an investigation. Feeling that this was the last straw, Mr. Potts sent a letter of resignation to the department on January 7, 2001, which was accepted.

Mr. Potts filed this § 1983 action asserting that he was deprived of a property right without due process when he was reassigned to court security, that

he was constructively discharged, and that he was deprived of a liberty interest in his good name.  He appeals from the district court's grant of summary judgment to defendants on all of these issues.  We address each one in turn.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party.  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c). "Mere allegations unsupported by further evidence, however, are insufficient to survive a motion for summary judgment."  *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

## A.

### *Property Interest*

The Due Process Clause of the Fourteenth Amendment ensures that one cannot be deprived of a property right absent due process of law.  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).  A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he had a protected property right.  *Id.*  We have recognized that "if state statutes or regulations place substantive restrictions on a government

actor's ability to make personnel decisions, then the employee has a property interest" protected by the procedural due process clause. *Hennigh*, 155 F.3d at 1253.

We therefore begin by examining Utah state law to determine whether Mr. Potts possessed a property interest in his position as a Patrol Sergeant with the Davis County Sheriff's Department. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000). The parties agree that Mr. Potts possessed a property interest in continued employment with the department under Utah law, *see* UTAH CODE ANN. § 17-30-18, but disagree regarding whether he had a property interest in his specific position as a patrol officer. Mr. Potts argues that "[t]he Sheriff's Department's transfer or reassignment . . . was a demotion in both pay and position and it undermined the CSC's reinstatement order." Aplt. Br. at 35.

Defendants assert first that Utah law "does not contain any prohibition against transferring or reassigning a patrol officer to the court system." Aple. Br. at 13. We agree. "The general rule is that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary." *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003) (internal quotation marks omitted). Title 17, chapter 30 of the Utah Code specifically allows "[a] merit system officer [to] be transferred, without examination, from one position to a similar position in the same class and grade in the same governmental unit." UTAH CODE ANN. §

-6-

17-30-13. Consequently, such transfers are within the discretion of the Sheriff and Mr. Potts has no claim of entitlement to his position as a patrol officer.

Mr. Potts contends that his reassignment from his position as a Patrol Sergeant to his subsequent position at the courts was, in fact, a demotion and not a transfer because he lost the "differential pay" he had earned as a Patrol Sergeant. Aplt. Br. at 31. As he observes, "[d]ifferential pay is automatically paid to patrol officers at the rate of four percent (4%) of their base salary for night shifts, which patrol officers are required to work on two-month rotations." *Id.* He was not able to receive such pay for his work in court security.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Schulz v. City of Longmont, Co.*, 465 F.3d 333, 443 (10th Cir. 2006) (holding police officers and firefighters did not have property interest in expected step increase denied when city imposed wage freeze). Differential pay is distinguishable from base pay. It is compensation for going above and beyond normal employee working hours and is not pay to which an officer is automatically entitled, unless he works the night shift. In this way, it functions much like overtime pay, which other circuits have determined is not a protected property interest. *See, e.g.*, *Rolon v. Henneman*, 517 F.3d 140, 148 (2d Cir. 2008) (loss of overtime pay did not deprive police officer of due process property interest); *Brown v. Brienen*, 722 F.2d 360, 365

(7th Cir. 1983) (noting that, in general, "disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment"). If employees had protected property interests in every nuance and detail of their particular positions, employers would lose their ability to transfer employees between positions – otherwise equal in pay and grade – without risking a lawsuit.

Our conclusion is supported by the text of the Utah statute, which permits the Sheriff's Department to transfer officers from "one position to a *similar* position in the *same class and grade* in the same governmental unit." UTAH CODE ANN. § 17-30-13 (emphasis added). The statute does not require that officers be transferred to *identical* positions or even positions that are substantially the same. It merely requires that they be transferred within the same class and grade. That is precisely what occurred here: when Mr. Potts was reinstated, his rank and salary remained the same as they had been prior to his discharge. Nothing in the statute requires that an officer working in a position that has night shift work with differential pay be transferred only to another position that has night shift work and the resulting opportunity to make differential pay. Mr. Potts has not shown any entitlement to differential pay under any Utah law. Accordingly, his transfer did not deprive him of a property interest protected by the due process clause.[1]

---

[1]Nor was Mr. Potts deprived of substantive due process. We have not decided whether an employee with a property right in state-created employment is

-8-

**B.**

*Constructive Discharge*

While it is a close question, we are not persuaded by Mr. Potts' arguments that he was constructively discharged without due process of law. "Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign." *Yearous v. Niobrara County Memorial Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997). Thus "[i]f [a] Plaintiff[] resigned of [his] own free will, even as a result of Defendant's actions, then [he] voluntarily relinquished [his] property interests and, thus, Defendant did not deprive [him] of property without due process of law." *Id.*

---

protected by the substantive due process clause. *See*, *e.g.*, *Hennigh*, 155 F.3d at 1257 ("We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process [].."); *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1215 n.17 (10th Cir. 1998) (noting that "it is unclear" whether an interest in continued employment is protected by substantive due process); *Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 489 n.6 (10th Cir. 1991) (assuming without deciding that the plaintiff had a property right in continued public employment, but noting that the law is "not clear what interest is required to trigger substantive due process guarantees."). Even assuming that such an interest would invoke substantive due process protection, Mr. Potts' reassignment "was not arbitrary or without a rational basis." *Hennigh*, 155 F.3d at 1257. Sheriff Cox and Chief Deputy Sheriff McLeod reassigned Mr. Potts for a rational reason. They had concerns about allowing Mr. Potts to return to his patrol position because he would be supervising the very people who had made the original allegations.

We determine whether Mr. Potts was constructively discharged based on a reasonable person test, not on his "subjective views of the situation," *id.*, or his "employer's subjective intent." *Tran v. Trs. of State of Colls. of Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004). Indeed, "[t]he question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." *Id.* To demonstrate constructive discharge, therefore, Mr. Potts must be able to show that he had "*no other choice* but to quit," *Yearous*, 128 F.3d at 1356 (internal quotation marks omitted) (emphasis in original), not merely that his working conditions "were difficult or unpleasant" due to disagreements with his supervisors. *Id.* at 1357; *see also Tran*, 355 F.3d at 1271 ("[A] constructive discharge requires a showing that the working conditions imposed by the employer are not only . . . adverse, but intolerable.").

We assess the voluntariness of Mr. Potts' resignation under the totality of the circumstances. *Lighton*, 209 F.3d at 1222. "Among the factors we consider . . . are (1) whether [he] was given some alternative to resignation; (2) whether [he] understood the nature of the choice []he was given; (3) whether [he] was given a reasonable time in which to choose; and (4) whether []he was permitted to select the effective date of resignation." *Yearous*, 128 F.3d at 1356 (internal quotation marks omitted).

Starting with the first factor, Mr. Potts asserts that he did not have an

-10-

alternative to resignation for several reasons including (1) his transfer to court security, (2) his inability to earn differential pay at his new position, (3) the Sheriff's Department's failure to provide him backup when he served protective orders, (4) his status as the subject of an Internal Affairs Investigation, (5) the Sheriff's and Chief Deputy's belief that he should not have been reinstated, and (6) the Sheriff's Department's refusal to investigate an alleged death threat that he received on his work voice mail. We have already discussed Mr. Potts' first two grounds and determined that they fell well within the Sheriff's Department's discretion and were permissible under Utah law, so we decline to conclude that they may have forced Mr. Potts to resign. As for the Sheriff's Department's alleged refusal to provide Mr. Potts with backup, there is no evidence in the record other than a single conclusory sentence in Mr. Potts' affidavit that suggests this occurred. *See* Aplt. App., vol. II at 179 ("Despite requests for assistance, I never received backup."). Mr. Potts does not provide any specific instances or details that might support his allegation. As discussed, "[m]ere allegations unsupported by further evidence, however, are insufficient to survive a motion for summary judgment." *Baca*, 398 F.3d at 1216,

Mr. Potts contends that continued employment was intolerable because the Sheriff and the Chief Deputy made it clear that they thought he was wrongly reinstated and that their conduct caused him considerable stress. "Although his sour relationship with [his bosses] may have made quitting [Mr. Potts'] best

-11-

option, [he] has not presented a genuine issue of material fact as to whether he had no other choice but to quit . . . ." *Baca*, 398 F.3d at 1218 (quotation marks omitted). And, as we have previously explained, "the fact that a plaintiff subjectively considers his or her workplace stressful and may have suffered personal health problems as a result is not an objective criterion used to determine if a reasonable employee would have been compelled to resign." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1136 n.7 (10th Cir. 2004). There is very little evidence in the record that suggests the voice mail Mr. Potts received at work was a death threat. As the district court noted:

> [T]he recording is largely unintelligible with the exception of someone saying, through laughter, 'he's gonna die.' Although the remaining dialogue is indecipherable, it appears to be a conversation between the caller and his companions and not intended as a message. Moreover, the recording reveals laughter and fails to convey the tone one would typically associate with a death threat.[2] Finally, there is no evidence indicating the source of the message, the identity of the caller, and whether Potts was the intended recipient.

*Potts v. Davis County*, 1:02-cv-00004, 2007 WL 1519061, at *11 (D. Utah May 21, 2007). We agree. Viewed in the light most favorable to Mr. Potts, the message is a strange one, but also one with highly incoherent content, a light-hearted tone, and an unidentifiable caller. In these circumstances, we decline to hold that the message was sufficient to create an intolerable working environment

---

[2] In fact, towards the end of the message, the caller appears to sing portions of Billy Joel's song, "You May Be Right" between bouts of laughter.

such that an objectively reasonable person would have felt compelled to resign.

As for the remaining factors – whether Mr. Potts understood the nature of the choice he was given, whether he was given a reasonable time in which to choose, and whether he was permitted to select the effective date of resignation – there is no evidence in the record to suggest that resignation was ever even suggested to him by anyone at the Sheriff's Department after his reinstatement. Instead, not only did the Sheriff's Department reinstate him to a position at the same pay level and grade that he had prior to his termination, it granted him full back pay, salary, and benefits and allowed him to take medical leave for stress. The district court did not err when it granted summary judgment to defendants on Mr. Potts' constructive discharge claim.

## C.

### *Liberty Interest*

Mr. Potts also asserts that he was not given an adequate opportunity to clear his name after his initial termination, and was therefore denied procedural due process. Relying on *Melton v. City of Okla.*, 879 F.2d 706 (10th Cir. 1989), he contends he was impermissibly denied the opportunity to respond to the three charges that the Sheriff's Department dropped prior to the CSC hearing. He correctly observes that in *Melton*, this Court held that a police officer was denied due process when he was not given the opportunity to respond to a perjury charge that was dropped on the morning of his disciplinary hearing. *Id.* at 722.

-13-

Two important factors distinguish *Melton* from this case. First, the plaintiff in *Melton* was terminated from the police force and not reinstated like Mr. Potts. *Id.* at 711. Second, in *Melton*,

> [g]iven the expectations created by the publicity concerning the perjury charge and the generalized nature of the stated reason for dismissal (violation of the Police Code of Ethics), it is reasonable to conclude that the public may have been left with the impression that Mr. Melton's dismissal was based in part upon the perjury charge.

*Id.* at 722. Because Mr. Potts was returned to the Sheriff's Department, the public could not have drawn the same conclusions as in *Melton*. "In fact," as defendants observe, "if the public looked at the facts of the instant case, they would correctly assume that [Mr. Potts] was reinstated because he had cleared his name on all charges, including the charges that were dropped." Aple Br. at 22.

## III.

Accordingly, we conclude that the district court correctly granted summary judgment to defendants after determining that the Davis County Sheriff's Department did not deprive Mr. Potts of his substantive or procedural due process rights, and that he was not constructively discharged.

**AFFIRMED**.

-14-