COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-446-CV

 

 

ERIC COX                                                                          APPELLANT

 

                                                   V.

 

WASTE
MANAGEMENT OF                                                    APPELLEES

TEXAS, INC. AND TONY
WADLEY

 

                                              ------------

 

           FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                            Introduction

In nine issues, appellant Eric Cox appeals the
trial court=s orders granting the separate
summary judgment motions of appellees Waste Management of Texas, Inc. (Waste
Management) and Tony Wadley.  We
affirm.  








                                        Background
Facts

Waste Management hired Cox as a waste truck
driver in July 2004.  Wadley, a route
manager, was Cox=s immediate supervisor, and
Wadley and Cox became friends.  During
that friendship, Cox often called Wadley on Wadley=s
business cell phone to discuss both personal and work-related matters.  In the latter part of 2005, however, Wadley
began aggressively seeking a closer relationship with Cox that Cox believed to
be romantic and sexual in nature.

For example, according to Cox, Wadley began
asking Cox to stay with him on weekends, come over to his house to watch
movies, and go on fishing trips with him. 
He constantly asked Cox, AWhen are
you going to give me some time?@  He told Cox that he and Waste Management
would take care of Cox and his family. 
Wadley sent Cox text messages saying things such as ADo u
know who loves u,@ AJust
know who loves you,@ and AI will
always be here for you Eric.@








Cox said that Afor a
long time [he] thought [Wadley] was just being friendly and then it got worse
and worse until [Cox] had enough.@  Wadley never tried to kiss Cox or touch
him inappropriately, and he never directly told Cox that he had any sexual
intentions, but Cox inferred from Wadley=s
statements and actions that Wadley wanted to have a romantic relationship.[1]


Cox did not return interest in such an apparently
romantic relationship, and he told Wadley to stop making such
communications.  When Cox told Wadley
that he was happy with his current relationship situation, Wadley told Cox that
such a statement made him angry and made him want to hurt Cox. Cox told Wadley
to leave him alone and that he would transfer his work location to avoid
Wadley, but Wadley told Cox three or four times that he would find Cox
regardless of where Cox went.  When Cox
complained to Wadley about the communications, Wadley would Astop for
a little bit and then he would start back up.@








On January 2, 2006, Cox finally determined that
he was being sexually harassed when he got a text message from Wadley in which
Wadley told Cox that he loved him.[2]  Cox became angry and called Charles (AMoose@) Tyler,
Wadley=s
supervisor, to express Cox=s fear
about Wadley=s behavior.  According to Tyler, Cox was vague during the
call about the nature of his complaint and said that he Adidn=t want
to get anybody in trouble,@ but
Tyler was still concerned, and he believed that Cox=s
complaints should be investigated.

The next day, Cox felt too much fear to return to
work, so upon his own suggestion, he met Tyler and Albert Godoy, Waste
Management=s human resources manager for
the northern Texas area and its primary sexual harassment investigator, for
about forty-five minutes at an IHOP restaurant. 
During that meeting, Godoy took notes as Cox told them that Wadley was Areal
persistent@ and that he Awouldn=t leave
[Cox] alone.@ 
Cox also showed them the text messages that Wadley had sent to Cox=s phone
and wrote a complaint about Wadley=s
behavior.  The parties dispute whether
Cox displayed text messages that he had sent to Wadley.

Although Godoy wrote down the text messages that
Cox had displayed, Cox did not believe that Tyler and Godoy took his complaints
seriously.  Godoy asked Cox what
remedy Cox wanted regarding Wadley=s
conduct, and Cox allegedly Arefused
to offer any suggestions.@ 
Tyler thought that the text messages that Cox had showed him were
inappropriate and that they potentially had a romantic tone.








After Tyler and Godoy=s
meeting with Cox at the IHOP, they went to talk to Houston Chambliss, a Waste
Management district manager (and Tyler=s
supervisor), about Cox=s complaints and his desire to
have all communication from Wadley stopped. 
Chambliss was shocked about the messages that Wadley had sent to
Cox.  Chambliss and Godoy then met with
Wadley to discuss Cox=s allegations.  Chambliss says that Wadley claimed that he
was trying to be a Abig brother@ to Cox
and also claimed that Cox had previously made sexual gestures to him.  Because Cox was allegedly Avague
about his complaints@ and because Wadley told Godoy
that Wadley=s text messages to Cox were a
result of ongoing communication between them, Godoy formed an initial opinion
that the conduct between Wadley and Cox could have been consensual.

On the same day that he met with Wadley
individually, Chambliss arranged for Cox to participate in a joint meeting with
Wadley, although according to Cox, Cox told them that he did not want to see
Wadley because he was uncomfortable around him and feared Awhat
[Wadley] might do.@[3] Wadley,
Cox, Tyler, Godoy, and Chambliss participated in that thirty-minute
meeting.  Godoy thought that the joint
meeting was the Abest way [to] find out the
facts.@








During the joint meeting, Chambliss says that Cox
only would repeat that he, Cox, was AF=d up@ or say
something like, ACome on, Tony.  Tell the truth.@  Wadley allegedly apologized and said that he
was trying to be a father figure to Cox and that he thought Cox was gay.[4]  Cox believes that the Waste Management
officials sided with Wadley during the meeting. 
Godoy says that the joint meeting made Cox=s
allegations Acloudier@ and
that the individuals at the meeting did not clarify any specific facts.

After the joint meeting, Cox made about twenty
calls to various mental health offices. 
Godoy referred Cox to Waste Management=s
employee assistance program, and Waste Management allowed Cox to take paid
short-term disability leave starting in January 2006.  Cox saw a psychiatrist for his mental health
related to Wadley=s alleged sexual harassment and
took some prescription medicine for his depression, anxiety, and sleeplessness.









In the middle of January, Waste Management
suspended Wadley for two weeks without pay because the company believed that
Wadley Aexercised
poor judgment in becoming too close to a subordinate.@  Waste Management also gave a written reprimand
to Wadley and placed the reprimand in his employment file.  The reprimand notified Wadley that his text
messages to Cox Acreated a perception of
harassment . . ., which is a violation of the Company=s
Harassment Policy.@ 
Even after his suspension ended, Wadley only appeared at work for Waste
Management between two days to two weeks until he voluntarily resigned his
employment on May 18, 2006.  Wadley never
contacted Cox again after the meeting on January 3, 2006.

Despite suspending Wadley, Waste Management did
not conclude that actual sexual harassment had occurred.  And Godoy did not report to Cox the result of
Godoy=s
investigation or the disciplinary action against Wadley because Cox never
returned to work.

 Godoy
called Cox at some point during Cox=s leave
to ask whether Cox wanted to return to work. 
Godoy says that he told Cox that if Cox wanted to return to work, there
were Avarious
options open to him@ and that he Aguarantee[d]
[Cox] that he would not be around [Wadley].@  But Cox says that the only thing Waste
Management offered him at that time was a transfer to its Lewisville
office.  He does not acknowledge that Waste
Management also offered to transfer Wadley. 
After speaking with Cox, Godoy received a call from Cox=s mental
health provider informing him Anot to
pressure [Cox] to return to work.@ 








Godoy did not make any official written report
about Cox=s allegations, although he
testified that he constantly communicated with his supervisors about the allegations
and his own investigation.  Godoy said
that he concluded his investigation by taking corrective action against Wadley
and by offering Cox Awhatever position he would
possibly want to work or whatever location he would possibly want to work.@  But he also said that he left the
investigation open to the extent that if more information became available,
further action against Wadley could have been taken.  He explained that he did not conclude that
Cox had been sexually harassed because his relationship with Wadley Awas one
apparently where there was quite a bit of [communication] outside of work
hours,@ so he
believed the relationship to be consensual.[5]  Cox is the only employee to have complained
about Wadley.








Cox=s
counsel, Susan Hutchison, sent Godoy a letter on May 1, 2006, stating that Cox
considered himself constructively discharged from employment because Waste
Management gave an Aineffective, inappropriate,
retaliatory[,] and terrible response@ to Cox=s
harassment allegation and no Areasonable
person would remain employed@ under
those conditions.  Waste Management=s
counsel, Janne Foster, responded to Hutchison=s letter
on May 5, 2006.  Foster=s letter
recited that Waste Management had previously offered to allow Cox to transfer
from the Fort Worth Waste Management district to another district or remain in
the Fort Worth district, in which case Waste Management would remove Wadley
from that district.  In either case,
Foster=s letter
assured Cox that he Awould not be required to work
with [Wadley].@ 
The letter stated, AThese
options remain available . . . . 
Naturally he is free to resign if he wishes, but he should clearly
understand the options available to him.@[6]  On May 9, 2006, Hutchison sent another
letter to Foster that reiterated Hutchison=s belief
that Cox had been constructively discharged, stating, AMr. Cox
is unable to return to work at Waste Management and will not do so.  What you have stated in your letter is the
epitome of >too little, too late.=@

Wadley voluntarily resigned from Waste Management=s
employment on May 18, 2006, more than four months after Cox=s
initial complaint.  Cox=s employment
with Waste Management officially ended on May 19, 2006.[7]









Cox sued appellees on November 20, 2006, and in
March 2007, Cox filed his amended petition. 
The petition contained causes of action against Waste Management under
the labor code and separate claims for intentional infliction of emotional
distress (IIED) and negligent retention or supervision of Wadley.  The petition also included a common law
assault claim against Wadley and an allegation that Waste Management should be
vicariously liable for the assault.

In September 2008, Wadley and Waste Management
filed separate motions for summary judgment. 
Cox responded to both motions, and after Waste Management replied to Cox=s
response, the trial court granted both motions. 
Cox filed his notice of this appeal. 


Standards of Review

Traditional summary judgment standard








In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678
(Tex. 1979).  The burden of proof is on
the movant, and all doubts about the existence of a genuine issue of material
fact are resolved against the movant.  Sw.
Elec. Power Co., 73 S.W.3d at 215. 
Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  

A defendant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see
Tex. R. Civ. P. 166a(b), (c).     A
defendant is entitled to summary judgment on an affirmative defense if the
defendant conclusively proves all the elements of the affirmative defense.  Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999); see Tex. R. Civ. P. 166a(b), (c).  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.  Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996). 

No-evidence summary judgment standard








After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex. 2002).  The trial
court must grant the motion unless the nonmovant produces summary judgment
evidence that raises a genuine issue of material fact.  See Tex. R. Civ. P. 166a(i); Sw.
Elec. Power Co., 73 S.W.3d at 215.

When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  We review a
no‑evidence summary judgment for evidence that would enable reasonable
and fair‑minded jurors to differ in their conclusions.  Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005)).

Sexual Harassment Claims








Waste Management filed a traditional summary
judgment motion on Cox=s claims under the labor
code.  In Cox=s first
four issues, he argues that the trial court improperly granted judgment to
Waste Management on the claims  because
(1) there are material fact issues regarding whether Cox was sexually harassed
by Wadley, (2) Waste Management did not prove its affirmative defense to show
that it exercised reasonable care to prevent and correct sexual harassment and
to show that Cox unreasonably failed to take advantage of preventative or
corrective opportunities, (3) there are material fact issues about whether
Waste Management retaliated against Cox, and (4) there are  material fact issues concerning whether Cox
was constructively discharged.[8]  Cox sued Waste Management for sexual
harassment under chapter twenty-one of the labor code.  

Section 21.051(1) of the labor code states in
relevant part, AAn employer commits an unlawful
employment practice if because of . . . sex, . . . the employer . . .
discriminates in any . . . manner against an individual in connection with
compensation or the terms, conditions, or privileges of employment.@  Tex. Lab. Code Ann. ' 21.051(1)
(Vernon 2006). Sexual harassment, including same-sex harassment, is one form of
discrimination prohibited under the labor code. 
See Hoffmann‑La Roche Inc. v. Zeltwanger, 144 S.W.3d
438, 445 (Tex. 2004); City of San Antonio v. Cancel, 261 S.W.3d 778, 783
(Tex. App.CAmarillo 2008, pet. denied)
(citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80B81, 118
S. Ct. 998, 1002B03 (1998)).








In the summary judgment proceedings at trial and
in their briefing on appeal, the parties have characterized Cox=s labor
code claims as Aquid pro quo@
harassment, Ahostile work environment@
harassment, and retaliation.  See Zeltwanger,
144 S.W.3d at 445 n.5 (recognizing these forms of sexual harassment); Garcia
v. Schwab, 967 S.W.2d 883, 885 (Tex. App.CCorpus
Christi 1998, no pet.) (same).  The parties
agree and we conclude that although Cox filed his sexual harassment claims
under the labor code, we may use federal authority related to Title VII of the
Civil Rights Act to determine the validity of the claims.  See 42 U.S.C. '' 2000e,
2000e-2 (2003); Tex. Lab. Code Ann. ' 21.001(1)
(Vernon 2006); Ysleta ISD. v. Monarrez, 177 S.W.3d 915, 917 (Tex. 2005);
Niu v. Revcor Molded Prods. Co., 206 S.W.3d 723, 728 (Tex. App.CFort
Worth 2006, no pet.).

Quid pro quo harassment      








Waste Management argued in its motion that it is
entitled to summary judgment on Cox=s quid
pro quo sexual harassment claims because the evidence negates any tangible
employment action that resulted from Cox=s
acceptance or rejection of Wadley=s
alleged unwelcome sexual harassment.  See
La Day v. Catalyst Tech., Inc., 302 F.3d 474, 481 (5th Cir. 2002); Wal‑Mart
Stores, Inc. v. Itz, 21 S.W.3d 456, 470 (Tex. App.CAustin
2000, pet. denied) (AThe elements of the cause of
action are as follows:  (1) A supervisor
(2) because of sex (3) subjects an employee to (4) unwelcome conduct that (5)
affects a tangible aspect of the employment relationship.@).  A tangible employment action is a significant
change in employment status, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a decision
causing a significant change in benefits. 
La Day, 302 F.3d at 481B82; see
Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761B62, 765,
118 S. Ct. 2257, 2268B70 (1998).     













Cox first contends that he suffered a tangible
employment action because Waste Management allegedly initially offered him only
a transfer to Waste Management=s
Lewisville office in response to his sexual harassment complaint.[9]  However, assuming as we must for summary
judgment purposes that Cox=s
testimony about the initial Lewisville transfer offer is true (and that Waste
Management did not instead also offer to transfer Wadley initially), Cox did
not suffer any tangible employment action based on that offer.[10]  Courts have held that a transfer in a
plaintiff=s job location, when the
transfer is unaccompanied by any change in salary, benefits, job
responsibilities, or career opportunities, is insufficient as a matter of law
to comprise a tangible employment action. 
See Harper v. City of Jackson Mun. Sch. Dist., 149
Fed. Appx. 295, 299 (5th Cir. 2005); Padilla v. Flying J, Inc., 119
S.W.3d 911, 915B16 (Tex. App.CDallas
2003, no pet.) (holding that a transfer that does not result in economic harm
or significantly different job responsibilities is not a tangible employment
action); see also Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d
1287, 1300 (11th Cir.) (stating that A[p]roviding
an employee with a choice about where she works does not change the terms or
conditions of her employment@), cert.
denied, 128 S. Ct. 499 (2007); cf. Herrnreiter v. Chi. Hous. Auth.,
315 F.3d 742, 744 (7th Cir. 2002) (collecting cases from various federal
appeals courts and explaining that when a lateral transfer Asignificantly
reduces the employee=s career prospects by preventing
him from using the skills in which he is trained and experienced,@ a
tangible employment action may exist), cert. denied, 540 U.S. 984
(2003).  Cox has argued that his offered
transfer to the Lewisville office comprises a tangible employment action
because it would have increased his commuting time, but he has not directed us
to anything in the record to support that assertion (such as evidence
demonstrating the relative distance from his residence to the Fort Worth office
as opposed to the Lewisville office), and we have not found such evidence.[11]


Also, even if Waste Management=s
initial offer to transfer Cox could have been a tangible employment action, the
undisputed evidence shows that Waste Management later offered to transfer
Wadley and keep Cox in the Fort Worth location while Cox was still on Waste
Management=s payroll.  Thus, Cox could have avoided any alleged
significant change of his employment conditions that would have been caused by
the transfer.  See La Day, 302
F.3d at 481B82; see also Pa. State Police
v. Suders, 542 U.S. 129, 146, 124 S. Ct. 2342, 2354 (2004) (explaining that
a plaintiff in a sexual harassment case must make reasonable attempts to Astave
off avoidable harm@).








Next, Cox contends that he suffered a tangible
employment action because he was constructively discharged.  A constructive discharge may qualify as a
tangible employment action.  Aryain v.
Wal‑Mart Stores Tex. LP, 534 F.3d 473, 480 (5th Cir. 2008);
Dillard Dep=t Stores, Inc. v. Gonzales, 72
S.W.3d 398, 410 (Tex. App.CEl Paso
2002, pet. denied).  A constructive
discharge occurs when an employer makes conditions so intolerable that an employee
reasonably feels compelled to resign. 
Davis v. City of Grapevine, 188 S.W.3d 748, 766 (Tex. App.CFort
Worth 2006, pet. denied); see Brown v. Kinney Shoe Corp., 237 F.3d 556,
566 (5th Cir.), cert. denied, 534 U.S. 817 (2001).  The Fifth Circuit has explained, 

In determining whether a
reasonable employee would feel compelled to resign, we have considered the
relevancy of the following events:

 

(1) demotion; (2) reduction in salary; (3)
reduction in job responsibilities; (4) reassignment to menial or degrading
work; (5) reassignment to work under a younger supervisor; (6) badgering,
harassment, or humiliation by the employer calculated to encourage the employee=s
resignation; or (7) offers of early retirement [or continued employment on
terms less favorable than the employee=s former
status].

Brown, 237 F.3d at 566 (alteration in original)
(quoting Barrow v. New Orleans S.S. Ass=n, 10
F.3d 292, 297 (5th Cir. 1994)); see also Suders, 542 U.S. at 134, 124 S.
Ct. at 2347 (explaining that to maintain a constructive discharge claim, the
plaintiff must Ashow that the abusive working
environment became so intolerable that her resignation qualified as a fitting
response@).








In his claim that he was constructively
discharged, Cox complains about alleged deficiencies in Waste Management=s
investigation and its ultimate response to his claim.  When asked directly during his deposition why
his employment with Waste Management ended, Cox testified, AIt was
from a doctor that suggested, under the circumstances, for me not to work there
anymore, pretty much, on that.@  He then said that Waste Management Adidn=t take
[him] serious[ly] from the get-go. . . . 
And they still don=t care, you know. . . .  And they don=t
understand exactly what happened.  I don=t
believe it was investigated enough to know exactly what happened.
. . .  I=m not
going to work for somebody that [does not] care.@ 

Although Waste Management=s
investigation may not have been as thorough, sensitive, or conclusive as Cox
desired, the undisputed evidence establishes that Waste Management:

 C      responded to Cox=s complaint within just two days after the
complaint surfaced by talking to Cox more than once in person, talking to
Wadley separately and then with Cox, and referring Cox to Waste Management=s employee assistance
program;

 

 C      allowed Cox to take short-term paid disability leave for
several months following Cox=s complaint;

 

 C      promptly suspended Wadley without pay for two weeks and placed
a written reprimand in his file;

 

 C      called Cox to inquire about his return to work, and, at the
very least, initially offered him a transfer to Lewisville so that he would not
have to work with Wadley; and 

 

 C      eventually offered to allow Cox to remain working in the Fort
Worth location and transfer Wadley from that location.

 

We cannot conclude that these actions were Acalculated
to encourage@ Cox=s
resignation.  See Brown, 237 F.3d
at 566; Davis, 188 S.W.3d at 766. 









Cox contends in his brief that Waste Management Adid not
respond to [his] psychiatrist=s
statement that [he] could not return to work so long as [Wadley] remained.@ The
psychiatrist, Dr. Germaine Hawkins, had written a letter to Waste Management
stating that Cox had suffered significant debilitating stress, was undergoing
psychotherapy, and could not return to work Aas long
as the stressor, his being harassed by [Wadley] continues and/or [Wadley]
continues to be employed by your company. 
[Cox] is very apprehensive . . . of potential future altercations or
situations involving that particular supervisor in question.@  But again, Waste Management=s May 5,
2006 letter to Cox=s attorney established that Cox
would not have to work around Wadley anymore, and the evidence indicates that
Wadley did not harass Cox, or even contact him, after Cox=s
initial report, which was more than four months before Cox=s
employment ended. 








Cox also contends that even Waste Management=s
personnel agreed that Cox suffered from intolerable working conditions.  However, Cox cites portions of the record
where such personnel were asked hypothetical questions about whether it would
be intolerable for Cox to work for Waste Management if (1) he had to work
with Wadley again, (2) Waste Management had taken no action in response to Cox=s claim,
or (3) Waste Management continued to employ Wadley but transferred Cox.  None of the facts underlying the hypothetical
questions actually occurred or would have occurred if Cox had responded
differently to Waste Management=s May 5,
2006 letter.  

Finally, we neither agree with nor discount Cox=s
expressed opinion that Waste Management did not care about him.  However, in analyzing a claim of constructive
discharge, we must use a reasonable person test and not base our decision on
Cox=s
subjective opinions.  See Potts v.
Davis County, 551 F.3d 1188, 1194 (10th Cir. 2009); Barrow, 10 F.3d
at 297 & n.19.  And the employer=s state
of mind is also not controlling.  Gonzales,
72 S.W.3d at 409.

For these reasons, we conclude beyond any genuine
issue of material fact and as a matter of law that the conditions of Cox=s
employment should not have reasonably compelled him to resign.  Davis, 188 S.W.3d at 766.  Thus, because Cox did not suffer any
tangible employment action, the trial court properly granted Waste Management=s
summary judgment motion on his quid pro quo harassment claim.  See La Day, 302 F.3d at 481B82;
Mason, 143 S.W.3d at 798.

Hostile work environment harassment








For Cox to prove a claim of hostile work
environment sexual harassment involving Wadley, he must show that he (1)
belonged to a protected group, (2) was subjected to unwelcome sexual
harassment, (3) the harassment was based on sex, and (4) the harassment affected
a term, condition, or privilege of his employment.  See Lauderdale v. Tex. Dep=t of
Criminal Justice, Inst. Div., 512 F.3d 157, 163 (5th Cir.
2007); Cancel, 261 S.W.3d at 784 & n.2; Garcia, 967 S.W.2d at
885.  In other words, he must prove that
Waste Management=s workplace was permeated with
discriminatory intimidation, ridicule, and insult that was sufficiently severe
or pervasive to create a hostile or abusive working environment to him
subjectively and to a reasonable person objectively.  See Garcia, 967 S.W.2d at 885B86.








Even if Cox provides evidence of a prima facie
hostile work environment claim, Waste Management asserted an affirmative
defense to that claim.  See City of
Waco v. Lopez, 259 S.W.3d 147, 151 n.3 (Tex. 2008).  Because Cox did not suffer any tangible
employment action as a result of Wadley=s
alleged sexual harassment, Waste Management is entitled to its affirmative
defense if it A(1) exercised reasonable care to
prevent[[12]]
and correct promptly [Wadley=s]
harassing behavior[,] and (2) [Cox] unreasonably failed to take advantage of
any preventive or corrective opportunities provided by [Waste Management] or to
avoid harm otherwise.@ 
Id.; see Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270.

Cox asserts that Waste Management did not prove
its defense as a matter of law because it did not take appropriate and prompt
remedial action, did not advise him of any remedial action taken, and conducted
a deficient investigation into his complaint. 
In Skidmore v. Precision Printing and Packaging, Inc., a company
official, Bryan, allowed an alleged harassment victim, Skidmore, to work away
from her harasser, Mitchell, but did not conduct any investigation or interview
Skidmore=s co‑workers
until after Skidmore filed an Equal Employment Opportunity Commission (EEOC)
complaint three months later.  188 F.3d
606, 611 (5th Cir. 1999).  Because
Skidmore felt ostracized by other employees after making the complaint, she
eventually left her employment.  Id.
at 611B12.  After Skidmore prevailed in her hostile work
environment harassment case against her employer at trial, the Fifth Circuit
reversed the trial court=s judgment because it held that,
as a matter of law, the employer took appropriate remedial action.  Id. at 612, 616.  The Fifth Circuit reasoned,








This Court has often
found that an employer=s response to employee
behavior constituted prompt remedial action as a matter of law.  In many such instances, in determining
whether the employer=s actions were remedial, we have considered whether
the offending behavior in fact ceased.  In this
case, we hold that Precision=s [the employer=s] conduct constitutes Aprompt remedial action@ as a matter of law.  Bryan testified that he instructed Mitchell
to leave Skidmore alone and moved Skidmore to a new shift.  At that point, the hostile work environment
terminated.  Though Skidmore testified
that she remained uncomfortable, Mitchell=s conduct ceased its offensive nature.  Indeed, Skidmore never registered a further
complaint with Bryan or any other manager at Precision.  Therefore, Precision=s action was Areasonably calculated@ to relieve, and in
fact did successfully abate, the hostile work environment, despite the
fact that Bryan did not conduct any investigation of the allegations until
after Skidmore filed an EEOC complaint months later, did not reprimand
Mitchell, and made no follow‑up inquiry with Skidmore as to whether the
harassment had ceased.  Thus, . . . the
district court erred in failing to grant judgment as a matter of law to
Precision. 

 

Id. at 616 (citations omitted and emphasis added).








In a similar fashion to Skidmore=s
argument, Cox has expressed his disagreement with how particular Waste
Management officials evaluated the merits of his complaint or how effectively
they investigated it.  However, there is
no dispute that Waste Management suspended Wadley without pay for two weeks
after Cox=s complaint[13]
and notified Wadley that he had violated the company=s
harassment policy.  There is also no
dispute that all of Wadley=s
communication with Cox stopped after Waste Management took that action.[14]        We
conclude that those circumstances render the factual disputes about specific
officials= investigative actions leading
up to Wadley=s discipline immaterial.  See Waymire v. Harris County, Tex.,
86 F.3d 424, 428 (5th Cir. 1996) (explaining that the issue is not whether an
investigating official took prompt remedial action, but whether the employer
did so); see also Weger v. City of Ladue, 500 F.3d 710, 723 (8th Cir.
2007) (holding that the employer was entitled to its affirmative defense
despite significant flaws in its investigation); Baldwin, 480 F.3d at
1305 (explaining that Aeven if the process in which an
employer arrives at a remedy in the case of alleged sexual harassment is
somehow defective, the defense is still available if the remedial result is
adequate@ because
the employment statutes are Aconcerned
with preventing discrimination, not with perfecting process@).








Also, although Waste Management did not terminate
Wadley=s
employment in response to Cox=s
complaint, as Cox might have desired, there is no requirement that the Aemployer
use the most serious sanction available to punish an offender, particularly
[upon] . . . the first documented offense.@  Waymire, 86 F.3d at 429.  Finally, although Cox claims that Waste
Management failed to provide him with information about Wadley=s
suspension, Waste Management=s May 5,
2006 letter to Cox=s counsel indicated that Waste
Management had taken Aserious disciplinary action@ against
Wadley.

For these reasons, we conclude as a matter of law
that Waste Management took prompt remedial action in response to Cox=s
complaint and satisfied the first element of its affirmative defense as a
matter of law.  Because Cox has not
challenged in the substance of his appellate brief whether Waste Management
satisfied the second element and because we conclude that Cox failed to take
advantage of Waste Management=s
corrective opportunities by declining to return to work following Waste
Management=s May 5, 2006 letter, we hold
that Waste Management proved its affirmative defense as a matter of law.  See Ellerth, 524 U.S. at 765, 118
S. Ct. at 2270; Lopez, 259 S.W.3d at 152 n.3.  Thus, on the basis of the affirmative
defense, we hold that the trial court did not err by granting summary judgment
for Waste Management on Cox=s
hostile work environment sexual harassment claim.[15]

 








Retaliation  

Next, Cox asserts that the trial court erred by
granting summary judgment for Waste Management on his retaliation claim.  Section 21.055 of the labor code establishes
that an employer commits an unlawful employment practice if the employer
retaliates or discriminates against a person who files a sexual harassment
complaint.  See Tex. Lab. Code
Ann. ' 21.055
(Vernon 2006).  AThe
elements of a retaliation claim are (1) the employee engaged in a protected
activity, (2) the employer took action against the employee, and (3) a
causal connection between the employee=s
protected activity and the adverse employment decision.@  Niu, 206 S.W.3d at 730; Herbert v.
City of Forest Hill, 189 S.W.3d 369, 376 (Tex. App.CFort
Worth 2006, no pet.).








At trial and on appeal, Waste Management has
contended that it is entitled to summary judgment on Cox=s
retaliation claim because the evidence establishes as a matter of law that Cox
did not suffer from an adverse employment action.  An employer=s action
is an adverse employment action for purposes of a retaliation claim when it is
harmful to the point that it could Adissuade
a reasonable worker from making or supporting a charge of discrimination.@  Burlington N. & Santa Fe Ry. Co. v.
White, 548 U.S. 53, 57, 68, 126 S. Ct. 2405, 2409, 2415 (2006); see Montgomery
County v. Park, 246 S.W.3d 610, 614 (Tex. 2007) (approving of the Supreme
Court=s
reasoning in White as applied to a claim of retaliation under the Texas
Whistleblower Act); Niu, 206 S.W.3d at 731. 

Cox argues that he suffered from an adverse
employment action because Waste Management forced his joint meeting with
Wadley.  Cox testified that the meeting
occurred despite his persistent objections and that he told Waste Management
officials about Wadley=s threats to him before the
meeting began.  Godoy knew about Cox=s
anxiety that Wadley caused before the joint meeting occurred.  Various Waste Management officials have
acknowledged how Cox=s exposure to Wadley during the
joint meeting could have increased Cox=s
anxiety and could have intimidated him.  


However, Godoy testified that the joint meeting
occurred so Waste Management could try to clarify Aexactly
what was happening@ and to see Awhat had
transpired or was transpiring between@ Cox and
Wadley.  He said that he told Cox that
the joint meeting was intended to clarify issues and arrive at a potential
resolution.  Although Waste Management=s
decision to have a joint meeting with Wadley and Cox may not have been prudent,
Cox has not directed us to any evidence in the record indicating that
Waste Management had a more sinister motive for the joint meeting.  













The purpose of anti-retaliation provisions
in employment discrimination statutes is to prevent an employer from
interfering Awith an employee=s
efforts to secure or advance enforcement@ of such
statutes=
anti-discrimination provisions.  White,
548 U.S. at  63, 126 S. Ct. at
2412.  Also, one of the stated purposes
of chapter twenty-one of the labor code, which contains the anti-retaliation
provision at issue, is to Asecure
for persons in this state . . . freedom from discrimination in certain
employment transactions.@ 
Tex. Lab. Code Ann. ' 21.001(4).  Thus, we hold that Waste Management=s
decision to have a joint meeting with Cox and WadleyCwhich
the evidence indicates was intended to promote, not hamper, the
investigation of Cox=s sexual harassment allegationsCcannot
as a matter of law serve as an adverse employment action (and thus the basis
for Cox=s
retaliation complaint) even if that meeting was not well advised under the
circumstances.  See Brooks v. City of
San Mateo, 229 F.3d 917, 928B29 (9th
Cir. 2000) (holding that despite the employer=s
requiring its employee, the sexual harassment victim, to attend group therapy
sessions and discuss the harassment incident with co-workers, an Aemployer=s
legitimate effort to deal with a traumatic workplace situation . . . regarding
sexual harassment cannot be the basis for a retaliation claim@).  In other words, we hold that a procedure that
(as far as we can tell from the evidence in the record) was intended to expose
facts regarding a claim of sexual harassment, even if it is unpleasant, would
not Adissuade
a reasonable worker from making or supporting a charge@ of that
harassment.  See White, 548 U.S.
at 57, 68, 126 S. Ct. at 2409, 2415; Niu, 206 S.W.3d at 731.  

Next, Cox claims that Waste Management=s offer
to transfer him to its Lewisville office comprises an adverse employment
action.  But while Cox states that
working in Lewisville would have been substantially different, he has
not directed us to any evidence showing that working there would have been any worse.  Thus, he cannot use the transfer offer to
establish an adverse employment action.  See
Scott v. Godwin, 147 S.W.3d 609, 617 (Tex. App.CCorpus
Christi 2004, no pet.) (analyzing a retaliation claim and the requirement of an
adverse employment action under another statute and explaining that the
employee must show the transfer makes the job objectively worse) (citing Serna
v. City of San Antonio, 244 F.3d 479, 485 (5th Cir.), cert. denied,
534 U.S. 951 (2001)); see also Sabzevari v. Reliable Life Ins. Co., 264
Fed. Appx. 392, 396 (5th Cir.) (stating that Aa
transfer that does not involve a demotion in form or substance cannot rise to
the level of a materially adverse employment action@), cert.
denied, 129 S. Ct. 111 (2008); Alvarado v. Tex. Rangers, 492 F.3d
605, 613 (5th Cir. 2007) (noting that a transfer can be an adverse employment
action if Athe new position proves
objectively worseCsuch as being less prestigious
or less interesting or providing less room for advancement@).  








Because we hold as a matter of law that neither
Cox=s
meeting with Wadley nor Waste Management=s
transfer offer to Cox can qualify as an adverse employment action, we conclude
that the trial court properly granted Waste Management=s
summary judgment motion as to Cox=s retaliation
claim.  See Mason, 143
S.W.3d at 798; Niu, 206 S.W.3d at 730.

Having decided that the trial court properly
granted Waste Management=s traditional summary judgment
on all of Cox=s claims arising under the labor
code, we overrule his first four issues.

Assault

In his fifth and eighth issues, Cox asserts that
the trial court erred by granting Wadley=s and
Waste Management=s summary judgment motions on
his claim that Wadley assaulted him. 
Wadley asserts that Cox has no evidence to establish any of the elements
of this claim; Waste Management contends the same and also asserts that even if
Wadley had assaulted Cox, it could not be held vicariously liable for the
assault through ratification or other reasons.








The definition of assault is the same in a civil
or criminal trial.  Gibbins v. Berlin,
162 S.W.3d 335, 340 (Tex. App.CFort
Worth 2005, no pet.); see City of Waco v. Williams, 209 S.W.3d 216, 223
n.7 (Tex. App.CWaco 2006, pet. denied).  Thus, to establish his assault claim, Cox
must show that Wadley (1) intentionally, knowingly, or recklessly caused
him bodily injury, (2) intentionally or knowingly threatened him with
imminent bodily injury, or (3) intentionally or knowingly caused physical
contact with him when Wadley knew or should have reasonably believed that he
would regard the contact as offensive or provocative.  See Tex. Penal Code Ann. ' 22.01(a)
(Vernon Supp. 2009); City of Waco, 209 S.W.3d at 223 n.7.  A threat is Aimminent@ when it
is a threat of present harm, not future or conditional harm.  Devine v. State, 786 S.W.2d 268, 270
(Tex. Crim. App. 1989).








Wadley never hit or shoved Cox or took any
similar physical action against him; there is no evidence that Wadley ever
caused Cox bodily injury. And the record contains only one incident of Wadley
touching Cox.  Specifically, Cox
testified that Wadley once Agrabbed@ his
shoulder for a Afew seconds@ after a
meeting to lead Cox to a company truck and Ashow
[Cox] some map or something.@  The record indicates that Wadley=s giving
Cox a map for Cox=s route was a normal part of
Wadley=s
supervisory duties.  Cox admitted
that he Adidn=t know
exactly@ what
Wadley=s
intentions were when Wadley touched his shoulder, but he did not think that
Wadley was trying to physically hurt him, and he admitted that Wadley=s hand
did not leave any physical mark and was on his shoulder only Along
enough to guide [him] to where [Wadley] was going and then he removed it.@  Cox never told anyone at Waste Management
about the grabbing of his shoulder, and there is nothing in the record
indicating that Wadley knew or should have reasonably believed that touching
Cox on his shoulder for a few seconds would be offensive or provocative to
Cox.  As for Wadley=s
communications with Cox, Cox testified that the only threats that Wadley made
were that he would find Cox wherever Cox went and that Cox=s
expressed happiness made Wadley Awant to
hurt@
him.  Neither of these threats are
imminent under the standard explained aboveCat most,
they express the potential for future harm.

Under these facts, we conclude that the trial
court properly granted Wadley=s and
Waste Management=s summary judgment motions on
the ground that the evidence submitted at trial cannot support Cox=s
assault claim as a matter of law.  See
Hamilton, 249 S.W.3d at 426; Moore, 981 S.W.2d at 269.  Thus, we overrule Cox=s fifth
and eighth issues.   

Negligent Retention or Supervision








In his sixth issue, Cox argues that the trial
court erred by granting summary judgment against his claim that Waste
Management negligently supervised or retained Wadley.  Waste Management has argued at trial and on appeal
that Cox=s
negligent supervision or retention claim is barred by a provision of the labor
code pertaining to workers=
compensation.  Texas courts have
explained that section 408.001(a) of the labor code prohibits an employee whose
employer carries workers= compensation insurance from
maintaining some common law claims, such as some negligence claims, against the
employer.  See Tex. Lab. Code Ann.
' 408.001(a)
(Vernon 2006); Fairfield Ins. Co. v. Stephens Martin Paving, LP, 246
S.W.3d 653, 655 n.1 (Tex. 2008); Feazell v. Mesa Airlines, Inc.,  917 S.W.2d 895, 898B99 (Tex.
App.CFort
Worth 1996), writ denied, 938 S.W.2d 31 (Tex. 1997).  Cox=s
negligent retention and supervision claims are simple negligence causes of
action based on Waste Management=s
alleged direct negligence.  Dangerfield
v. Ormsby, 264 S.W.3d 904, 912 (Tex. App.CFort
Worth 2008, no pet.).

With regard to the effect of section 408.001(a),
Cox argues on appeal, for the first time in his reply brief, only that Waste
Management did not prove that it carried workers=
compensation insurance at the time of his employment; he does not assert any
other legal or factual reason why section 408.001(a) does not bar these two
claims.  However, the evidence submitted
by Waste Management (through an affidavit signed by Godoy) establishes that
Waste Management carried workers=
compensation insurance during Cox=s
employment and that Cox was covered under the insurance.  Also, Godoy testified during his deposition
that Cox filed a workers= compensation claim during his
absence from work.








Thus, because Cox=s sole
contention related to the effect of section 408.001(a) is not factually true,
we conclude that the trial court=s order
granting Waste Management=s summary judgment motion should
be affirmed as to Cox=s negligent retention or
supervision claims on the basis that the labor code precludes the claims.  See Haire v. Nathan Watson Co., 221
S.W.3d 293, 301B02 (Tex. App.CFort
Worth 2007, no pet.) (holding that part of a trial court=s
summary judgment decision should be affirmed because the appellant did not
challenge all of the grounds for the decision on appeal); Shelton v. Sargent,
144 S.W.3d 113, 129 (Tex. App.CFort
Worth 2004, pet. denied) (holding the same and noting that A[w]e do
not have a duty to perform an independent review of the record and applicable
law@); see
also Vawter v. Garvey, 786 S.W.2d 263, 264 (Tex. 1990) (@A court
of appeals may not reverse a trial court=s
judgment in the absence of properly assigned error.@).  We overrule Cox=s sixth
issue. 

Intentional Infliction of Emotional Distress








In his ninth issue, Cox asserts that the trial
court erred by Adeciding that there were no
material fact issues regarding whether Eric Cox was subjected to intentional
infliction of emotional distress by Tony Wadley individually.@  The substance of Cox=s
briefing on his IIED claim only concerns Wadley=s
asserted liability for that claim; Cox has not argued in briefing or during
oral argument that the trial court=s
decision to grant Waste Management=s
summary judgment motion on his IIED claim was improper.  However, Cox did not plead an IIED claim
against Wadley in the trial court. 
Instead, Cox asserted in his first amended petition only that Waste
Management was Adirectly liable for intentional
infliction of emotional distress upon Eric CoxCnot as a
derivative cause of action[,] . . . but as a result of Waste Management=s own
conduct.@  Thus, because Cox did not plead an IIED claim
against Wadley at trial, and because Cox=s ninth
issue concerns only an alleged IIED claim against Wadley, not Waste Management,
we also overrule this issue.  See Via
Net v. TIG Ins. Co., 211 S.W.3d 310, 313 (Tex. 2006) (stating that A[d]efendants
are not required to guess what unpleaded claims might apply and negate them@);
SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347, 355 (Tex. 1995)
(explaining that a summary judgment defendant is only required to Ameet the
plaintiff=s case as pleaded@). 

Punitive Damages








Finally, in his seventh issue, Cox asks whether
the trial court erred by deciding that he could not recover punitive
damages.  However, because we have
decided that the trial court properly granted summary judgment regarding all of
Cox=s claims
pleaded against both Waste Management and Wadley, we decline to address whether
punitive damages could have been awarded on those claims, and we overrule Cox=s
seventh issue.  See Tex. R. App.
P. 47.1; Hawkins v. Walker, 233 S.W.3d 380, 395 n.47 (Tex. App.CFort
Worth 2007, pet. denied).

Conclusion

Having overruled all of Cox=s
issues, we affirm the trial court=s orders
granting the summary judgment motions of Waste Management and Wadley.

 

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, MCCOY, and
MEIER, JJ.

DELIVERED:  October 29, 2009 

 











[1]Wadley has offered
nonromantic, nonsexual explanations for some of his statements to Cox.





[2]Cox said that he did not
feel harassed until the Avery end@ because it was Areally hard to decide@ when Wadley Awent too far.@





[3]Chambliss says that Cox
agreed to the joint meeting.





[4]Wadley, who admitted in
his deposition that he is homosexual, says that he was embarrassed and
humiliated by the meeting with Cox.





[5]Chambliss also did not
conclude that Cox had been sexually harassed because of Cox=s ongoing communication
with Wadley; he characterized Cox=s complaint as harassment, but not sexual
harassment.  However, he admitted that
Wadley still Adid not perform as a
manager accordingly.@  Tyler, on the other hand, concluded that
Wadley had sexually harassed Cox based on the text messages Wadley and Cox
exchanged.





[6]During his deposition,
Chambliss testified, A[W]e were going to do
everything we could to accommodate [Cox] making a smooth transition back into
the day-to-day routine of the rank and file of the drivers and such.@





[7]Foster=s letter to Hutchison,
sent on May 5, 2006, concluded by stating, 

 

I understand from your
letter that Mr. Cox does not want to remain employed by Waste Management any
longer.  He, therefore, will be removed
from payroll effective May 19, 2006, as a voluntary resignationCfailure to return from
leave.  If I am incorrect and Mr. Cox
does not wish to resign, please let me know immediately.

 

Cox did not express any
desire to not resign, so Waste Management removed him from its payroll on May
19, 2006.





[8]Cox lists these issues
separately on the first page of his brief, but he argues them together, and we
will consider them together.





[9]He testified in a
deposition, A[T]he only thing [Waste
Management] offered me was going to Lewisville. 
That was that simple.  It was
black and white to where that was it. 
Because you need to go to Lewisville. 
This is the thing for you.@





[10]Without citing authority,
Cox argues in his brief that a Atransfer in direct response to a complaint of
sexual harassment falls within the definition of [a] >tangible employment
action.=@





[11]In fact, Waste Management=s May 5, 2006 letter to
Cox=s counsel recites that
its Lewisville office is closer to Cox=s home.





[12]Waste Management has a
policy that states in part, AWaste Management is committed to providing a work
environment free of unlawful harassment. 
Company policy prohibits sexual harassment. . . .  The Company=s anti-harassment policy
applies to all persons involved in the operations of the Company.@  Cox has acknowledged that he received
training about the company=s sexual harassment policy. 





[13]Cox does not contend that
Waste Management is not entitled to its affirmative defense because Wadley=s suspension came too
late or because Waste Management=s investigation took too long.





[14]Cox cites Fuller v.
City of Oakland, Cal., to argue that mere cessation of harassment
does not establish an employer=s affirmative defense.  47 F.3d 1522, 1528B29 (9th Cir. 1995).  But in Fuller, the court concluded
that the employer failed to take any appropriate remedial steps following the
employee=s complaint; the same
cannot be said here.  Id. at 1529;
see also Knabe v. Boury Corp., 114 F.3d 407, 411 n.8 (3d. Cir. 1997) (AA remedial action that
effectively stops the harassment will be deemed adequate as a matter of law.@).





[15]Because we hold that the
trial court properly granted summary judgment on the basis of Waste Management=s affirmative defense, we
will not address whether the evidence raised a genuine issue of material fact
on the prima facie elements of Cox=s hostile work environment claim.  See Doe v. Tex. Ass'n of Sch. Bds., Inc.,
283 S.W.3d 451, 457 n.9 (Tex. App.CFort Worth 2009, pet. denied).